James Albert Lee was indicted by the Montgomery County Grand Jury for first degree theft of a motor vehicle, in violation of § 13A-8-3 (b), Code of Alabama 1975. After a jury trial, appellant was found "guilty as charged" and sentenced to life imprisonment under the Alabama Felony Habitual Offender Statute. A motion for new trial was filed on April 16, 1982, which was denied on May 25, 1982.
Prior to trial, appellant's attorney and the District Attorney stipulated that the appellant did on July 27, 1981, take a 1980 white Pinto automobile from 551 South Hull Street in Montgomery, Alabama, without the permission of the owner, Alabama Reference Laboratory, Inc.
Francis Lee, the ex-wife of the appellant, testified that appellant was living with her on July 27, 1981. Mrs. Lee stated that, around 7:00 that morning, appellant rode with her to downtown Montgomery where she let him out of the car in front of the Alabama Department of Public Safety building. Mrs. Lee stated that at that time she gave appellant two dollars for breakfast *Page 820 
and further added that appellant was sober when he was dropped off.
Later that morning around 9:00, appellant called Mrs. Lee on the telephone. Mrs. Lee stated that she could tell at that time by the tone of appellant's voice that appellant had been drinking. They planned to meet for lunch, but Mrs. Lee stated that appellant never "showed up."
Mrs. Lee testified that appellant had a history of drinking problems. She stated that appellant had attempted to obtain professional help on several occasions for this problem, but he had had only partial success. She stated that appellant had experienced an alcoholic "blackout" in 1980 in which he did not remember where he had been or what he had done.
Everett Wright, an old friend of appellant and owner of a downtown sandwich shop, testified that appellant came into his shop that morning at 11:00 and appeared "highly intoxicated." He gave appellant some coffee but refused to give him any money. Mr. Wright stated that appellant told him that he had been out all night drinking. When appellant left, he was staggering, but Mr. Wright stated that appellant was "not that far gone" to be falling down drunk.
Cynthia Robinson, an employee of Alabama Reference Laboratories, Inc., on South Hull Street, stated that she saw appellant at 2:10 p.m. in the office parking lot. She stated that appellant was looking in all the cars parked in the lot and appeared to be intoxicated. Ms. Robinson stated that appellant leaned over and looked into the passenger window of a 1980 white Ford Pinto. He then went around the car and got in the car on the driver's side. She stated that appellant drove off really fast without swerving, although he had some trouble changing the automobile gears.
Harrell McKinney, the laboratory manager, testified that the Pinto was a company car and that appellant had never been authorized to drive it.
Phillip Stabler, an Alabama State Trooper, testified that he investigated a one-car traffic accident about twenty miles south of Montgomery at approximately 3:00 p.m. on this particular day. He stated that he observed a Pinto automobile that had been demolished. Officer Stabler identified appellant as the driver and stated that he could smell alcohol on him. A partially consumed bottle of vodka was found in the car.
Appellant testified that, after his ex-wife had dropped him off in downtown Montgomery at 7:00 a.m., he went to Charlie's Cafe and ate breakfast. After breakfast, he walked to Radio Hospital and then went to a "washing machine place." He stated that after he had gone to the "washing machine place," he did not remember anything further until waking up two days later in the hospital.
Appellant testified that he was a chronic alcoholic and had experienced "blackouts" previously. He stated that he had attended professional alcoholic treatment centers but received no lasting help.
Willie Parramore, Jr., an alcoholism counselor, stated that he treated appellant in March of 1981 for alcoholism. He testified that appellant is a chronic alcoholic and that "blackouts," the inability to remember things that took place while drinking, are common among alcoholics.
The appellant contends that because of his drunkenness he could not have formed the necessary mental intent for the crime of theft.
The well settled rule in Alabama is that mere drunkenness, voluntarily produced, is never a defense against a criminal act. Green v. State, 342 So.2d 419 (Ala.Cr.App. 1977). A specific criminal intent is an essential element of the crime of theft. Ala. Code § 13A-8-2 (1975).
The undisputed evidence shows that appellant had been drinking some time after 7:00 a.m. on the day of the theft. Mrs. Lee stated that appellant sounded as though he had been drinking when he called her at 9:20 a.m. Everett Wright testified that *Page 821 
appellant appeared "highly intoxicated" at 11:00 a.m. and was staggering when he left his sandwich shop. However, he stated that he "was not that far gone." Cynthia Robinson stated that appellant appeared intoxicated at 2:10 p.m. while walking from car to car looking in car windows. She also stated that, when he found the Pinto with its car keys inside, he immediately jumped in the car and drove off fast without swerving. State Trooper Stabler stated that he smelled alcohol on appellant that afternoon at the wreck scene. He also found a partially full bottle of vodka in the car. Evidence was also introduced that appellant had a history of alcohol abuse and had previously suffered an alcoholic "blackout." The record, however, does not disclose whether a blood alcohol examination was ever made of appellant or how much vodka remained in the bottle that was found in the wrecked car.
Although all the evidence shows that the appellant was drunk at the time of the commission of the crime, there was no evidence to show as a matter of law that the appellant was intoxicated to such an extent as to render him incapable of harboring the required intent. The intoxication must be of such character and extent as to render the accused incapable of consciousness that he is committing a crime, incapable of discriminating between right and wrong — stupefaction of the reasoning faculty. Johnson v. State, 32 Ala. App. 217,24 So.2d 228 (1945); Green, supra. Whether appellant's intoxicated condition rendered him incapable of harboring the special intent was a question for the jury. Foust v. State,414 So.2d 485 (Ala.Cr.App. 1982). Here the jury decided this issue against appellant.
Appellant further contends that the trial court erred in failing to sustain his objections to questions asked of Mr. Parramore, an expert witness on alcoholism, concerning whether appellant had the specific intent as defined by Alabama law for the crime of theft. During cross-examination, the following exchange occurred:
(District Attorney):
 "Q. Define what is necessary for a criminal intent to commit a theft. You said that this defendant would not have such an intent if he had drunk a bottle of Vodka.
(Mr. Parramore):
 "A. Within that given specified period of time — and I will refer this back to my other statement regarding the state of consciousness of the individual, conscious awareness and the ability to form or make judgmental decisions, and these are sufficiently impaired, that the person in all probability would not be capable of making or forming a conscious intent.
 "Q. What is necessary under the laws of Alabama as you understand it.
"MR. GUNTER: I will object to that.
"MR. MILLER: He has testified as an expert.
"THE COURT: Wait just a minute. Overruled.
"You all quit fussing and ask the question.
 "Q. Give me the basis of the statutory law and its interpretation in Alabama in order to have a criminal intent with regards to a person being intoxicated on alcohol.
"MR. GUNTER: I will object to that.
"THE COURT: Overruled.
 "A. I am not a legal authority. I'm speaking on the disease of alcoholism. I'm sorry that I cannot tell you any legal basis for that.
 "Q. So your testimony with regard to his question as to whether or not he would have the legal intent really has no merit under the law of the State of Alabama?
 "MR. GUNTER: Objection, Your Honor. I didn't ask him —
"THE COURT: Overruled.
"Q. Is that correct?
 "A. I can speak of a conscious intent as I as a person, as a student of human behavior understands it. I cannot speak with legal authority. . . ."
As stated in McGinnis v. State, 382 So.2d 605 (Ala.Cr.App. 1979), a specific objection is *Page 822 
necessary before a ruling of a trial judge is subject to review, unless the matter is clearly not proper for any purpose. After careful review of the record, we find that no specific grounds for appellant's objections were given. In any event, appellant was not prejudiced by the above questions since Mr. Parramore never answered said questions.
We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.