The defendant was convicted of manslaughter and sentenced to ten years' imprisonment.
 I
On December 6, 1981, appellant went to the home of Rosie Lee James, Mary Cashew and Eddie Moss in Mobile. The house is called "Eddie's Place" and is commonly referred to as a "shot house," a place where alcoholic beverages are served. The back room of the house was set up as a lounge. Chairs and tables were aligned along the walls of the room, and a Rockola, a coin-operated record machine, was against the wall in one corner. The middle of the room was open so that people could dance or talk. Approximately ten people were present when appellant came in. Appellant danced with his cousin, Vera White, and then sat down in a chair next to the Rockola.
The evidence adduced at trial indicated that shortly after appellant sat down, the deceased, Willie Barney, and Hurrise "Petey" Timmons, came over to the Rockola to play music. The deceased and Timmons began arguing with one another in front of the Rockola. The Rockola, which was on wheels, moved when the two of them jostled against it, causing appellant's leg to be jammed between the Rockola and the wall. Appellant told the deceased and Timmons to "cut it out," whereupon Timmons approached appellant, who was still seated. According to Vera White, a state witness, Timmons acted as though he were going for something inside his shirt. Gloria Wiggins and Pam Cleveland, defense witnesses, also saw Timmons approach appellant with his hand under his shirt.
As Timmons approached appellant, it appeared to appellant that Timmons had a gun or knife tucked in his pants. Appellant pushed Timmons away with his hand and stood up. After Timmons was pushed away, the deceased came toward appellant. Appellant pushed him back and pulled out his gun. Appellant testified that the deceased grabbed the gun and it went off. The deceased tried to get the gun out of appellant's hand and it went off again. Appellant jerked the gun, trying to get it out from between the two of them, and it went off a third time, whereupon the deceased slid off appellant onto the floor.
The record shows that the trial judge charged the jury on murder and on the two lesser included crimes of "manslaughter" and "criminally negligent homicide." The jury began deliberations and broke for *Page 1047 
lunch before reaching a verdict. After lunch, the jury asked the court to clarify the charges. The court again instructed the jury on murder, manslaughter, and criminally negligent homicide. Still being unable to reach a verdict, the jury recessed at the end of the day. After lunch on the second day of deliberations, the jury again requested the court to define the varying degrees of homicide. Again, the trial judge instructed the jury on murder, manslaughter, and criminally negligent homicide.
After receiving its instructions, the jury resumed its deliberations. After deliberating for a while, the jury approached the bench for a third time with a question concerning the court's instructions. At that time, the trial judge instructed the jury to disregard the charge on criminally negligent homicide. The instruction to the jury to disregard any consideration of criminally negligent homicide was duly excepted to by defense counsel. Shortly after withdrawal by the court of the charge the jury found appellant guilty of manslaughter.
 II
Appellant contends that the trial judge committed reversible error by instructing the jury to disregard the charge on criminally negligent homicide. Appellant cites Fulghum v.State, 291 Ala. 71, 277 So.2d 886 (1973), for the proposition that an individual accused of the greater offense has a right to have the court charge on the lesser offenses included in the indictment when there is a reasonable theory from the evidence supporting his position.
According to Lami v. State, 43 Ala. App. 108, 180 So.2d 279
(1965), a court may properly refuse to charge on lesser included offenses only (1) when it is clear to the judicial mind that there is no evidence tending to bring the offense within the definition of the lesser offense, or (2) when the requested charge would have a tendency to mislead or confuse the jury.
The question we must decide, then, is whether or not the evidence adduced at trial supports the theory that appellant could have been found guilty of criminally negligent homicide. We hold that it does not.
The commentary to § 13A-2-2, Code of Alabama 1975, guides us in clarifying the distinction between behavior which is either "reckless" or constitutes "criminal negligence:"
 "A common denominator in both is that in each instance the underlying conduct must involve a `substantial and unjustifiable risk' that a result or circumstance described in the penal statute will occur or exists. The reckless offender is aware of the risk and `consciously disregards' it. On the other hand, the criminally negligent offender is not aware of the risk created (`fails to perceive') and, therefore, cannot be guilty of consciously disregarding it."
Appellant testified that he drew his gun because he had been in an argument with both the deceased and Timmons and he saw what he believed to be a knife in Timmons' shirt. One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence. Appellant was guilty of either murder or manslaughter or he was guilty of nothing at all.
 III
The only other issue to be decided in this case is whether or not the trial court's failure to require production of a statement given to the police by a prosecution witness constitutes reversible error. An eyewitness to the initial affray (but not to the fatal encounter) was asked on cross-examination if she had made a statement to the police and if she had signed it. After the witness answered both questions in the affirmative, defense counsel requested that he be allowed to review her statement. We quote from the record:
"Q Did you make a statement to the police?
"A Yes.
"Q Did you sign the statement? *Page 1048 
"A Yes.
 "MR. DEEN: Judge, could I have a copy of the statement? I believe I'm entitled to it.
 "MR. HARGETT: Your Honor, he's not entitled to it under Baynes. I'll more than willingly give it to him in connection with this.
 "MR. DEEN: I believe Herman [sic] Lee Pate says I'm entitled.
"THE COURT: Let's proceed, Mr. Deen."
Appellant relies on Ex parte Pate, 415 So.2d 1140 (Ala. 1981), in support of his argument that where a prosecution witness has testified on direct examination in the trial of a case, the defendant, upon proper predicate, is entitled to have the court conduct an in camera inspection to determine initially: (1) whether the statement made by the witness before trial differed in any respects from statements made to the jury during trial, and (2) whether the statement requested was of such a nature that without it the defendant's trial would be fundamentally unfair.
We can distinguish Pate, however, from the case now before us. In Pate, the prosecuting attorney refused to supply defense counsel with the witness's statement and the trial court denied defense counsel's motion to produce. In the case at bar, the prosecuting attorney expressed a willingness to supply the requested statement. The court made no ruling adverse to the defendant. Defense counsel made no pretrial motion to produce nor did he make an objection or a request for a ruling at trial.
A party seeking reversal on appeal must not only argue valid grounds of reversible error committed below, but he must also have preserved error for review by proper procedural mechanisms. Ex parte O'Leary, 417 So.2d 232 (Ala. 1982). Review on appeal is limited to matters on which rulings are invoked at the trial level. In the absence of a ruling, a request for a ruling, or an objection to the court's failure to rule, this court has nothing to review. Whorton v. State, 422 So.2d 812
(Ala.Cr.App. 1982).
There being no error in this record, the cause is affirmed.
The foregoing opinion was prepared by the Honorable JOHN D. SNODGRASS, Circuit Judge, temporarily on duty on the court pursuant to § 12-2-30 (b)(6), Code of Alabama 1975; the court has adopted his opinion as its own.
AFFIRMED.
All the Judges concur.