The appellant, Roger Lee Greer, was indicted by the Lee County Grand Jury for the murder of Douglass Williams. Later, *Page 887 
appellant pleaded not guilty to the charge. He then filed a motion for a mental examination, which was granted. Appellant was then transferred to the Taylor Hardin Medical Facility for observation.
On May 23, 1984, appellant's trial by jury commenced, and on May 24, 1984, the jury returned a guilty verdict of murder as charged in the indictment. The trial judge then sentenced appellant to ninety-nine years in the State penitentiary. This appeal followed.
The first issue appellant presents for our review is whether the trial court erred in charging the jury as to the possible range of punishments the appellant could receive if convicted. Appellant maintains that the trial judge improperly charge the jury on the possible punishments the appellant could receive if convicted, a consideration clearly outside the province of the jury. The applicable portion of the trial judge's jury charge is thus quoted:
 "Now, I've mention [sic] to you, murder is what is known as a Class A Felony. And I will tell you the possible punishments only as a matter of information. The question of guilt or innocence is for you to decide. The question of what punishment, if any, should be imposed in the event you should decide on guilt, is for me to decide. I'll tell you as a matter of information, murder is what is known as a Class A Felony. It is punishable by imprisonment in the penitentiary for not less than ten years nor more than 99 years or life, with a possible fine of up to $20,000. Manslaughter is what is known as a Class C felony. The possible punishments for that would be imprisonment in the penitentiary for not less than a year and a day, nor more than 10 years and a possible fine of up to, and including, $5,000." (R. 266)
As the State argues in its brief, the appellant objected, not on the ground that the court had informed the jurors of possible punishment, but rather on the ground that the charge erroneously stated the range of the sentence in accordance with the general enhancement statute. After hearing appellant's objection, the trial judge then made the following additional instruction to the jury:
 "Okay. Ladies and gentlemen of the jury, it was pointed out that I stated one thing incorrectly to you. And I state this only for information. You are not to consider it in your deliberations. And I probably should not even have mentioned it to you at all, about the question of punishment, because punishment is not your function. That's mine. And you need not consider that. But the punishment for a Class A felony is ten years to 99 years or life and a fine as I mentioned to you, except that if a firearm or a deadly weapon is used, or attempted to be used, the punishment is not less than 20 years. In the case of manslaughter, it's a Class C felony. If a firearm or deadly weapon is used in that or attempted to be used, then the punishment would be not less than 10 years nor more than 10 years. That's what it would be. But again, that is not a matter for your consideration. That is only given for your information." (R. 276) (Emphasis added.)
In the case of Brazell v. State, 423 So.2d 323 (Ala.Cr.App. 1982), this court held: "We do not approve of the practice of instructing the jury on punishment where the fixing of punishment is the responsibility and duty of the trial judge." However, where the judge also instructs the jury that the duty rests with him in the imposition of the sentence, the instructions regarding the punishment will be treated as extraneous instruction, resulting in harmless error. Id. Rule 45, A.R.A.P.
Furthermore, as stated earlier, appellant's objection did not apply to the issue now complained of. Therefore, the issue now before us was not properly preserved for review.
Appellant's second issue is thus stated: "Whether the statements concerning the defendant and his attorney `getting the story straight' made by the prosecutor in his closing argument constituted improper argument which inflamed and prejudiced the *Page 888 
jury to the extent that the defendant did not receive a fair trial?"
A review of the transcript reveals that the following occurred during the State's closing argument to the jury:
 ". . . But the defendant and his attorney couldn't even get the story straight —"
 "MR WILLIAMS: Your honor, we object to that, saying that the defendant's attorney has some story to get straight and [sic] regards to the testimony that's been presented here today.
 "THE COURT: Ladies and gentlemen, you will base your verdict on the evidence in the case. Go ahead." (R. 260)
We are of the opinion that as to this issue the record is void of any adverse ruling from which the appellant may appeal. Moreover, the record does not reflect any attempts by the appellant to invoke a ruling. In order to maintain an argument on appeal, the appellant must show that the error was preserved. As stated in Trawick v. State, 431 So.2d 574
(Ala.Cr.App. 1983), "[a]n adverse ruling is a preliminary requirement to preservation of error for appellate review."
Furthermore, Yates v. State, 390 So.2d 32 (Ala.Cr.App. 1980), in quoting Lawson v. State, 377 So.2d 1115 (Ala.Cr.App.), cert. denied, 377 So.2d 1121 (Ala. 1979), held:
 "`The general rule is that improper argument of counsel is not a ground for a new trial or subject to review on appeal unless there is due objection by counsel or a motion to exclude, an adverse ruling thereon by the court, or a refusal of the trial court to make a ruling.'" (Emphasis added in Yates.)
On the other hand, even if it can be argued that the trial judge did rule by way of the statement he issued to the jury, we are of the opinion that the judge "impliedly" sustained the appellant's objection. Therefore, since the appellant did not move for the trial court to exclude the comment or instruct the jury to disregard it, he did not establish a required aforementioned adverse ruling from which he can appeal. Yates, supra; Cagle v. State, 211 Ala. 346, 100 So. 318 (1924).
The appellant also argues that the trial court erred in admitting evidence, by way of testimony, of an autopsy. Appellant states that the prosecution failed to establish a proper chain of custody of the body in order to show that it had not been tampered with in any way.
Before we address appellant's contention, we are compelled to point out that the appellant never asserted, either at trial or in his brief on appeal, that the body was tampered with. Therefore, since there is no suggestion that the body was tampered with in any way, the "state does not have to negate the remotest possibility of alteration, substitution or tampering with the evidence." Shute v. State, 469 So.2d 670
(Ala.Cr.App. 1984).
In Bryant v. State, 428 So.2d 641 (Ala.Cr.App. 1982), this court held, in a fact pattern similar to the present case, that the better practice in a murder prosecution would have been for the autopsy assistant who transported the body and delivered the expended shells to the firearms expert to testify. However, testimony regarding the body did not injuriously affect the defendant's substantial rights on the ground of insufficient chain of custody since, with both the coroner and the forensic pathologist testifying that the victim had a gunshot wound to the chest, "there existed a reasonable probability that there had been no tampering with the body." Id.
In the case at bar, the forensic pathologist testified as to the identity of the victim. Also, a police officer from the City of Opelika testified regarding the identity of the victim and the stab wound of the victim. We also believe that the State's fact summation in its brief on appeal regarding the chain of custody of the victim's body accurately showed that there existed sufficient reasonable probability that the evidence (the body) had not been tampered with. The State's brief states, regarding the chain of custody:
 "Denise Harris was in charge of the hospital morgue. She obtained Douglass *Page 889 
Williams' body from the emergency room and locked it in the morgue on August 29, 1983. (R. 121) On the same date, Tim Gray transported a body from the hospital morgue to the state forensic lab in Montgomery. The body stayed in substantially the same condition during his custody and control. (R. 124-125) The following morning, Dr. Sapala performed an autopsy on the body of Douglass Williams, which was the same body delivered by Tim Gray. (R. 208-214)."
Based upon the above summation of events regarding the transfer of the victim's body to Montgomery, we find there existed a reasonable probability that there had been no tampering with the body.
The appellant's fourth proposal for our consideration is whether there was sufficient evidence to sustain his conviction for murder. Appellant maintains that his intoxicated condition at the time of the stabbing incident negated any intent to kill. Appellant submits that the evidence of his intoxication was such that he could not be found guilty of a specific intent crime, such as murder, and also maintains that sufficient evidence was presented in his defense to support his claim of self-defense.
As to the self-defense claim, we are not persuaded. The facts and evidence adduced at trial show that when the appellant exited the house immediately before the stabbing, the victim, who had previously armed himself with a hatchet, had placed the hatchet under a chair. Therefore, the victim, at the point in time of the stabbing, was unarmed. Furthermore, after the appellant stabbed the victim, he withdrew the knife and attempted another strike with the knife. The victim was able to stop the second strike, and, in an attempt to escape, he ran across the street. Appellant followed, pursuing the victim and swinging the knife. The victim avoided the appellant by pushing a shopping cart into his path and then ran back to the house and asked for help and then succumbed in the front yard. The evidence reflects that the appellant pursued the victim until he dropped in the front yard of the house. (R. 22-24, 39, 53)
Testimony by witnesses to the incident clearly refutes any claim of self-defense and is sufficient for the jury to decide that the appellant formed the specific intent to kill the victim.
As to appellant's claim that he was so intoxicated at the time of the stabbing that he could not have formed the specific intent to kill the victim, we rely on Lee v. State,439 So.2d 818 (Ala.Cr.App. 1983), in our answer. Lee held:
 "Although all the evidence shows that the appellant was drunk at the time of the commission of the crime, there was no evidence to show as a matter of law that the appellant was intoxicated to such an extent as to render him incapable of harboring the required intent. The intoxication must be of such character and extent as to render the accused incapable of consciousness that he is committing a crime, incapable of discriminating between right and wrong — stupefaction of the reasoning faculty. Johnson v. State, 32 Ala. App. 217, 24 So.2d 228 (1945); Green, supra, [342 So.2d 419 (Ala.Cr.App. 1977)]. Whether appellant's intoxicated condition rendered him incapable of harboring the special intent was a question for the jury. Foust v. State, 414 So.2d 485
(Ala.Cr.App. 1982). Here the jury decided this issue against appellant." (Emphasis added)
In the present case, there was testimony that the appellant was in a drunken state when he committed the crime. However, as to the issue of intoxication, the trial judge charged the jury as follows:
 "What about intoxication? Okay. Intoxication is not a defense to a criminal charge except as provided as I will tell you. Intoxication, whether voluntary or involuntary is admissible in evidence whenever it is relevant to negate an element of the offense charged. By that I mean this, ladies and gentlemen of the jury. Intoxication may negate an element. Whether such would be the case *Page 890 
or not would be for you to decide. Intoxication could be a defense if the person is so intoxicated at the time that he was incapable of forming a criminal intent to do an act. . . ." (R. 267-268)
As to the issue of whether the appellant's intoxicated condition rendered him incapable of forming the required special intent to kill, we are of the opinion that such a consideration is for the jury to decide and their decision will not be disturbed on appeal.
Appellant's fifth issue for review is whether the trial court erred in refusing to instruct the jury as to criminally negligent homicide.
Robinson v. State, 441 So.2d 1045 (Ala.Cr.App. 1983), is factually similar to the case at bar. In Robinson, the defendant pulled a gun after the victim approached the defendant with his hand under his shirt. According to the testimony of the defendant and witnesses for both the State and the defense, the victim did have his hand in his shirt when he approached the defendant. The Robinson defendant testified that a scuffle ensued and the gun went off three times. The trial judge initially charged the jury on not only murder and manslaughter, but also criminally negligent homicide. Later, the jury requested that the court define the varying degrees of homicide. The trial judge again instructed the jury on murder, manslaughter, and criminally negligent homicide. The jury then resumed deliberations, but returned a third time for instructions. The trial judge then instructed the jury to disregard the charge regarding criminally negligent homicide. The jury later returned a guilty verdict of manslaughter.
On appeal, this court held in Robinson that "[o]ne who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun may discharge; therefore, he cannot be guilty of mere criminal negligence. Appellant was guilty of either murder or manslaughter or he was guilty of nothing at all." We believe the analogy between Robinson and the case at bar is clear.
Furthermore, a trial judge may properly refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense. Wesley v. State, 424 So.2d 648
(Ala.Cr.App. 1982); Chavers v. State, 361 So.2d 1106 (Ala. 1978).
We believe that there was no rational basis for charging the jury with the lesser included offense of criminally negligent homicide in the present case. See § 13A-1-9 (b), Code of Alabama 1975. Thus, the court's decision not to charge on criminally negligent homicide did not constitute error.
Finally, appellant maintains that the trial judge erred in its failure to charge the jury regarding assault in the first degree. Appellant contends that the nature of the victim's medical treatment mandated such a charge. We are not so convinced.
The evidence showed that the victim's death was caused by the stabbing, which cut the pulmonary artery. However, it is not necessary to prove that the blow administered by an accused was the sole cause of death of a victim. Flanagan v. State,369 So.2d 46 (Ala.Cr.App. 1979); Huckabee v. State, 159 Ala. 45,48 So. 796 (1909). "Even if it [the blow] was only a partial cause accelerating death, the defendant is nevertheless responsible."Flanagan, supra; Harvey v. State, 15 Ala. App. 311, 73 So. 200
(1916). In consideration of the immediately foregoing premise and the proposition already addressed in issue five of this opinion dealing with the trial judge's discretion in being able to refuse to charge the jury on a lesser included offense where the evidence does not support the requested charge as detailed in Wesley, supra, we conclude that the trial judge was correct in not charging the jury on the lesser included offense of assault in the first degree.
We find it hard to believe that the appellant in this case can argue "with a straight *Page 891 
face" that his action could result in a conviction of assault in the first degree. The code section dealing with assault in the first degree, § 13A-6-20, pertains only to incidents where the victim was seriously injured in some fashion but was not killed.
Here, the stab to the heart of the victim caused death, even though the stab may have only been a partial cause. The actions of the appellant set in motion the events that resulted in the victim's death. The trial judge acted properly in refusing to charge the jury with assault in the first degree as a lesser offense included in murder. To do otherwise, we believe, would have frustrated the intent of the legislature when it formulated the "lesser included offense" statute. See §13A-1-9, Code of Alabama 1975.
We have carefully reviewed the record for any errors injurious to appellant's substantial rights, and have found none. Therefore, this case is due to be affirmed.
AFFIRMED.
All the Judges concur.