494 So.2d 792 (1986)
Francine McGhee KENNEDY
v.
STATE.
5 Div. 936.
Court of Criminal Appeals of Alabama.
February 25, 1986.
Rehearing Denied May 13, 1986.
Certiorari Denied September 26, 1986.
Dewey W. Teague and C.S. Whittelsey, Opelika, for appellant.
Charles A. Graddick, Atty. Gen. and Tommie Wilson, Asst. Atty. Gen., for appellee.
Alabama Supreme Court 85-977.
McMILLAN, Judge.
This appeal follows a conviction for the offense of manslaughter in violation of § 13A-6-3(a)(1), Code of Alabama (1975). Due to the trial court's failure to instruct the jury on the lesser-included offense of criminally negligent homicide, we reverse and remand.
The appellant and the deceased, Douglas Kennedy, were wife and husband and had been married for over eight years at the time of the shooting. They had three children, two of whom testified at trial in support of the appellant's testimony. The events in question happened on New Year's Eve, December 31, 1983.
The appellant and her husband had decided that they, along with their minor children, would go up to the appellant's sister's house, before midnight, to watch the new year begin. When the appellant's husband got home from work earlier in the evening, he lay down on the couch in the den and went to sleep.[1]
When the appellant awakened her husband around 10 o'clock to ask him if he still wanted to go to her sister's house, he became violent and knocked the appellant off the couch.[2] The appellant testified that her husband "started kicking" her; became very upset; and began to use "ugly words." The evidence for the defendant indicated that Douglas Kennedy called his wife a "bitch" and told her that he was "just sick" of her "goody two shoes attitude"; that he also told her that she needed to "be in heaven setting [sic] next to God"; that the appellant tried to get away from her husband but he was "constantly driving and kicking"; and that when their son, Nicky, intervened and pleaded with the *793 father, he turned on the child and "started screaming and yelling at him."
The appellant said she told the children to get their shoes and clothes together so that they could leave and go up to their aunt's house; that she went back to the bedroom to get her things together but her husband continued to "curse and raise sand"; and that the appellant tried unsuccessfully to reason with her husband in an attempt to placate him.
According to the appellant, she knew that her husband kept a pistol in their bedroom. She testified that, in the past, during arguments, her husband would "run and get the gun" and threaten to shoot her. She said that on this occasion, however, she waited until her husband had left the bedroom and returned to the den and then she got the gun. She said that because she was "afraid of the gun," she placed it in her left hand, even though she is right handed, when she returned to the den to get the children.
The defendant further testified that Douglas Kennedy continued to curse her and threatened to "throw" both her and the children "out the door"; that he stated that he did not care where they went; that he also made reference to a woman he knew who, he said had a "lot more class" than (the defendant). She said that as the argument continued, her husband abruptly turned his gaze toward a corner of the room and began to stare at a vase which was near the television set; and that, momentarily distracted, she also turned and looked toward the television set. At this point, she said, Douglas Kennedy "reached out and hit the gun." She stated that she did not pull the trigger and did not hear the pistol discharge. She testified in fact she did not at first realize that her husband had been shot, but that he "just happened to throw his head back and that was when we realized he was shot." The deceased was killed by a single gunshot wound to the forehead.
The appellant's nine-year-old daughter Tiffany testified that, on the night in question, her parents got into an argument. She said that her father threatened to put the family "out in the cold" and called her mother a "real bad name." She said he also threatened to "knock her [mother's] damn head off." According to Tiffany, when her mother glanced at the television set, her father used his right hand to hit the gun and "that's when it went off." Tiffany also testified that her mother did not threaten her father with the pistol and did not point it at him.
The appellant's twelve-year-old son, Nicky Kennedy, also testified. On the night in question, Nicky stated, his parents were arguing and his father threatened to "knock [his mother's] head off." Nicky testified that his mother went to the bedroom and returned to the den with a pistol which she was holding in her left hand. He said that his father told his mother that a particular woman friend of his had "a lot more class than my mama," and that at about this time, his father began to stare at a vase in the corner of the room. Nicky said that his mother turned to look at a "Christian commercial" which had come on the television, and that his father then rose up from the couch with his right hand and hit the pistol, which discharged one time. Nicky denied that his mother had pointed the gun at his father and also denied that she had threatened him with the pistol.

I
On appeal, two issues are raised, which will be considered in inverse order. The appellant's second issue is whether she was entitled, under the evidence in this case, to a jury instruction on the lesser included offense of criminally negligent homicide. After considering arguments from both sides, the trial court concluded that an instruction on the offense of criminally negligent homicide would not be given, based upon the authority of Robinson v. State, 441 So.2d 1045 (Ala.Cr.App.1983). On appeal, the State relies solely on the authority of Robinson for its position that the appellant was not entitled to the requested charge.
*794 The distinction between "reckless" behavior and "criminally negligent" behavior has been stated as follows:
"`A common denominator in both is that in each instance the underlying conduct must involve a "substantial and unjustifiable risk" that a result or circumstance described in the penal statute will occur or exists. The reckless offender is aware of the risk and "consciously disregards" it. On the other hand, the criminally negligent offender is not aware of the risk created ("fails to perceive") and, therefore, cannot be guilty of consciously disregarding it.'" Robinson v. State, supra, 441 So.2d at 1047, quoting Commentary, § 13A-2-2, Code of Alabama (1975).
In Robinson, the appellant was involved in an argument with the deceased and another man by the name of "Timmons" while they were drinking at a "shot house." When the deceased came toward the appellant, the appellant pushed him back and pulled out a gun. According to the appellant, the deceased grabbed the gun and it discharged three times, killing the deceased. After a trial by jury, the appellant in Robinson was found guilty of the offense of manslaughter. Although the trial court in Robinson initially instructed the jury on the offense of criminally negligent homicide, this instruction was withdrawn after the jury, for the third time, asked for clarification of the trial court's instruction. In upholding the propriety of the trial court's decision, this court in Robinson concluded that the evidence presented at trial did not "support the theory that [the] appellant could have been found guilty of criminally negligent homicide." Id. at 1047. In reaching this conclusion, this court, per the Honorable John D. Snodgrass, Circuit Judge, reasoned as follows:
"Appellant testified that he drew his gun because he had been in an argument with both the deceased and Timmons and he saw what he believed to be a knife in Timmons' shirt. One who intentionally draws a gun in response to or in anticipation of a confrontation with another is certainly aware of the risk that the gun might discharge; therefore, he cannot be guilty of mere criminal negligence. Appellant was guilty of either murder or manslaughter or he was guilty of nothing at all." Id.

In the present case, there are several factual elements which distinguish the case sub judice from the Robinson case.
Based upon the facts presented at trial in the present case, it is apparent that the appellant was attempting to avoid a confrontation with her husband and was unaware of the potential risk which had been created. The appellant testified that, in the past, her husband had used his pistol to threaten her when they got into an argument, but that this time, however, she retrieved the gun before her husband had the opportunity to do so. The appellant, in her attempt to avoid a confrontation or an accident, went so far as to hold the pistol in her left hand. Under these facts, Robinson is distinguishable because the appellant's evidence supports that she was not attempting to escalate the confrontation but, on the contrary, was attempting to minimize the potential danger and prevent the confrontation from becoming worse. The appellant, as well as the two eyewitnesses, testified that she did not threaten her husband with the gun and did not point the gun at him. She said that the appellant was momentarily distracted by her husband's "staring" at a vase in the corner and that when she glanced toward the television set, he made his fatal move. The appellant testified that she did not pull the trigger and did not hear the gun discharge. Only one round of ammunition was fired and Douglas Kennedy was killed by a single blast to the forehead.
Where there is a "reasonable theory" from the evidence which would support a jury charge on a lesser-included offense, the accused is entitled to the charge. Williams v. State, 474 So.2d 178 (Ala.Cr.App. 1985). A "reasonable theory," based upon the evidence presented at trial, was that the appellant in this case was not aware of the risk that the gun would discharge. The appellant testified that she was not familiar *795 with the pistol; that she did not know the gun was loaded; that she was "afraid" of the pistol; and that she was deliberately holding the pistol in her left hand, even though she was right handed.
As the Alabama Supreme Court recently noted: "The defendant has the right to request instructions based upon any material hypothesis which the evidence in his favor tends to establish." Ex parte Stork, 475 So.2d 623, 624 (Ala.1985). In the case sub judice, the appellant's claim that she did not intend to use the gun, and, in fact, held it in her left hand when she went back into the den provides a "reasonable theory" which would support a jury charge for the lesser offense of criminally negligent homicide.[3] For this reason, we reverse and remand.[4]
REVERSED AND REMANDED.
All the Judges concur.
NOTES
[1] The appellant testified that her husband had been drinking wine earlier in the evening but that she did not observe him using cocaine. Post-mortem tests, however, revealed the presence of cocaine in Douglas Kennedy's urine.
[2] Douglas Kennedy weighed 204 pounds and was five feet, eight and one-half inches tall. The appellant is five feet, two inches tall.
[3] As the Alabama Supreme Court has noted, "[U]nder Alabama law an accidental killing may support a conviction for murder, manslaughter, or negligent homicide, depending on the circumstances of the case." Ex Parte Weems, 463 So.2d 170, 172 (Ala.1984).
[4] Because the second issue is decided in favor of the appellant, we will not, at this time, consider the initial argument raised on appeal.