JAMES H. FAULKNER, Retired Justice.
Theodore Alton Roberts, Jr., was indicted for the capital offense of murder during a robbery in the first degree or an attempt thereof in violation of § 13A-5-40(a)(2), Code of Alabama 1975. Roberts was denied youthful offender status. He was arraigned and entered a plea of not guilty. The jury found Roberts guilty as charged in the indictment, and he was sentenced to life imprisonment without the possibility of parole. He raises four issues on appeal.
I
Roberts contends that the trial court committed reversible error in denying his motions for change of venue and for a new venire based on the ground of pretrial publicity.
The victim in this case was Afton Lee, Sr., a 95-year-old black male, who lived in Birmingham and who was a prominent philanthropist and millionaire. (Lee founded the Rosedale Community in Homewood where he owned extensive rental properties.) He was found bludgeoned to death in the walk-in freezer of his grocery store in Homewood. Lee’s wallet and money from the store’s cash register were missing when his body was discovered.
In support of his motion for change of venue, Roberts presented the testimony of local television personnel who stated that the three local commercial television stations broadcast a total of 41 newscasts concerning Lee’s death. Roberts then presented newspaper articles from two local newspapers, which both have a daily circulation of approximately 306,000 readers. Roberts also introduced evidence that there were 515,000 adults in Jefferson County qualified by age to sit on a jury. Roberts then presented affidavits from seven Jefferson County residents stating that, based upon the content and extensive media coverage of Lee’s death, they were of the opinion that Roberts could not obtain a fair and impartial trial in Jefferson County.
Roberts testified at the motion hearing that news accounts allegedly reporting that he was a member of a gang, that he had been asked to leave Rosedale Community Park, or that he had been involved with drugs were incorrect. On cross-examination Roberts admitted that he had been asked to leave Rosedale Community Park because of an argument at the swimming pool. After hearing arguments from counsel, the trial court took the matter under advisement.
On June 18, 1990, the trial court denied ■Roberts’s motion for change of venue, and Roberts was given the opportunity to conduct individual voir dire examinations of all the potential jurors who indicated they had read or had heard about this case. Of the 34 persons questioned, only 2 indicated that they had an opinion concerning Roberts’s guilt or innocence. One of these was challenged for cause and the challenge granted. Another potential juror originally stated that he had an opinion but later stated that he could put aside what he had heard and follow the court’s instructions. Roberts’s challenge of this juror for cause was denied.
All of the other 32 persons questioned stated they had either heard of the case from news reports or had heard it discussed. All stated that they only knew that a murder had occurred; none knew the names of persons allegedly involved in the case or the details. They all stated that they had no opinion concerning Roberts’s guilt or innocence and that they could give Roberts a fair trial.
*64 “Absent a showing of abuse of discretion, a trial court’s ruling on a motion for change of venue will not be overturned. Ex parte Magwood, 426 So.2d 929, 931 (Ala.), cert. denied, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983). In order to grant a motion for change of venue, the defendant must prove that there existed actual prejudice against the defendant or that the community was saturated with prejudicial publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Franklin v. State, 424 So.2d 1353 (Ala.Crim.App.1982). Newspaper articles or widespread publicity, without more, are insufficient to grant a motion for change of venue. Anderson v. State, 362 So.2d 1296, 1298 (Ala.Crim.App.1978). As the Supreme Court explained in Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961):
“ ‘To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror’s impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court....’
“The standard of fairness does not require jurors to be totally ignorant of the facts and issues involved. Murphy v. Florida, 421 U.S. 794, 799-800, 95 S.Ct. 2031, 2035-2036, 44 L.Ed.2d 589 (1975). Thus, ‘[t]he proper manner for ascertaining whether adverse publicity may have biased the prospective jurors is through the voir dire examination.’ Anderson v. State, 362 So.2d 1296, 1299 (Ala.Crim.App.1978).”
Ex parte Grayson, 479 So.2d 76, 80 (Ala.1985), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
There is nothing in the record to suggest that the jurors could not or did not render a verdict based solely on the evidence presented at trial. Nor has it been shown that the trial judge abused his discretion in denying the motions for change of venue or for a new venire. With no showing of an abuse of discretion, the trial court’s decision will be upheld.
“Jury prejudice can be presumed from pretrial publicity if that publicity is sufficiently prejudicial and inflammatory and if it saturated the community where the trial was held_ This principle is rarely applicable and reserved for extreme situations where pretrial publicity renders ‘virtually impossible a fair trial by an impartial jury drawn from the community.’ ”
Bundy v. Dugger, 850 F.2d 1402, 1424 (11th Cir.1988), cert. denied, 488 U.S. 1034, 109 S.Ct. 849, 102 L.Ed.2d 980 (1989) (citations omitted).
We are unpersuaded by the evidence proffered by Roberts in support of his motions. It is undisputed that the commercial television stations provided extensive coverage of Lee’s death and Roberts’s trial. Roberts, however, failed to introduce into evidence the contents of any of the 41 newscasts. Hence, there is no evidence that those newscasts were not factual in nature but were designed to inflame or prejudice the public.
Although several newspaper articles stated that Roberts may have been a member of a youth gang known as the Disciples, these articles almost always quoted Homewood Police Chief Jerry Haynes, who stated that there was no evidence to support the claim that Roberts was a member of that gang or in any other gang in the Homewood area.
Likewise, we are unpersuaded by the seven affidavits presented by Roberts. Even assuming that the methodology used to select the affiants is such that those affiants accurately reflected the attitude of Jefferson County residents in general, the affidavits do not demonstrate that the community was so predisposed to Roberts’s guilt that prejudice must be presumed.
Nor can we say that Roberts has demonstrated actual prejudice in the entire ve-nire. “The relevant question is not whether the community remembered the case, but whether the jurors at [the defendant’s] trial had such fixed opinions that they *65 could not judge impartially the guilt of the defendant,” Patton v. Yount, 467 U.S. 1025, 1035, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984). Nothing in the record shows that any adverse publicity prejudiced the veniremembers against Roberts.
Because Roberts has failed to establish that the news coverage so saturated the community, and was so prejudicial and inflammatory as to be presumptively prejudicial and because Roberts has failed to demonstrate actual prejudice in the entire venire, we hold that the trial court did not abuse its discretion in denying the motions for change of venue and for a new venire.
II
Roberts next alleges that the trial court erred in not allowing him to question each potential juror individually outside of the presence of the venire. We disagree.
At the pretrial hearing on Roberts’s “Motion for Individual Sequestered Voir Dire and Sequestration of Jurors During Voir Dire and Throughout the Trial,” the trial court responded that it intended to sequester the jurors throughout the trial and that it would defer the question of voir dire sequestration until the occasion to consider it arose. Prior to the commencement of the trial, the court reiterated its decision to defer ruling upon Roberts’s motion, stating that, should it become necessary to question the jurors outside the hearing and presence of the remaining jurors, the court would allow individual voir dire at that time. The trial court overruled defense counsel’s objection and defense counsel excepted.
The voir dire began and the venire-members were asked general questions as a group. The court and the attorneys then went through the various panels and named those persons whom they needed to question further based on, inter alia, pretrial publicity or attitudes concerning the death penalty. Thirty-eight potential jurors were then called in and were individually questioned outside the presence of the other jurors. Defense counsel did not object to this procedure nor did he state that this individual sequestered voir dire was somehow insufficient. We note that it was the trial court’s decision to change from group voir dire to individual voir dire and that defense counsel was prepared to examine the veniremembers as a group concerning the issue of pretrial publicity.
Roberts contends on appeal that he was not afforded the opportunity to ask each juror “open-ended questions to determine what they have read or heard about the crime and the appellant, what opinions they have formed, their attitudes on the death penalty and other sensitive matters.” Such was clearly not the case.
A review of the record reveals that Roberts received exactly what he requested in his motion. He had an opportunity to individually question any juror he desired outside of the presence of the other jurors. As his request was ultimately granted, he has no adverse ruling from which to appeal. Because an adverse ruling is a prerequisite to appellate review, the absence of an adverse ruling precludes review by this court. Wood v. State, 416 So.2d 794 (Ala.Cr.App.1982).
Ill
Roberts contends that the prosecutor made seven improper statements during rebuttal at the close of the guilt phase of Roberts’s trial, warranting reversal by this court. Defense counsel lodged no objections to six of these allegedly improper statements during the trial below (see R-914, -915, -923, -929, -930, -930). There being no objection interposed below and no ruling from the trial court, this court has nothing to review with respect to these six statements. Robinson v. State, 441 So.2d 1045 (Ala.Cr.App.1983).
With respect to the seventh allegedly improper statement, the record reveals the following:
“MR. BROWN: That’s what Mr. Parson’s [the defense counsel’s] job is. If the facts are on his side, he will argue the facts. If the law is on his side, he will argue the law. And if neither one is on his side, he is going to pick out every little inconsistency that everybody says *66 and that he can find to make it sound like we have the wrong person.
“MR. PARSON: Your Honor, I’m going to have to object to this line at this particular point. We are supposed to be sticking to the evidence as presented from this witness stand. I am not on trial in this particular case.
“THE COURT: This is rebuttal, and the Court will allow it. Go ahead.”
Control of closing arguments rests in the broad discretion of the trial judge, and where there is no abuse of discretion established, there is no error. Hannah v. State, 518 So.2d 182 (Ala.Cr.App.1987).
The prosecutor’s comment was clearly made “in the heat of debate” in response to defense counsel’s closing argument wherein he laboriously pointed out every possible inconsistency in the testimony of the State’s witnesses. The trial court did not abuse its discretion in allowing that argument. Touart v. State, 562 So.2d 625 (Ala.Cr.App.1989).
IV
Roberts contends that the trial court committed reversible error when it allowed an iron pipe to be exhibited to the jury during several days of trial, when his objection to the pipe’s admission into evidence was ultimately sustained.
Roberts cites no legal authority in support of this issue. “Arguments not based on any legal authority have the same effect as if no argument had been made, and the argument will be deemed waived.” Vinzant v. State, 462 So.2d 1037, 1039 (Ala.Cr.App.1984).
We note, however, that had this issue been properly argued in brief, the trial court’s decision to allow the pipe to be exhibited to the jury while the prosecution examined three witnesses who would attempt to lay the proper predicate for its admission was permissible. The prosecutor could not attempt to lay the proper predicate for the pipe’s admission without asking three of its witnesses specific questions about the pipe which required the witnesses’ identification and physical examination of the pipe in the courtroom. We note, moreover, that when the trial court sustained defense counsel’s objection to the pipe’s admission at the close of the State’s case, defense counsel did not request that the court immediately instruct the jury to disregard the pipe as evidence.
The judgment of the circuit court is affirmed.
AFFIRMED.
PATTERSON, P.J., and TYSON, TAYLOR and McMILLAN, JJ., concur.
BOWEN, J., concurs in result only.