After Veronica Ann Cagle Wilson had a scuffle with another woman at "Pat's Pearl's" in Birmingham, Alabama, she and three companions, Larry Thompson and his wife Charlene, and Charles Wayne Flanagan, left the lounge in Larry's automobile. While the four traveled to an isolated area in Coalburg only three members returned to Birmingham that early morning of January 7, 1978. Ann Wilson had been brutally stabbed to death. Flanagan was indicted and convicted for her first degree murder. Sentence was fixed at life imprisonment.
The State's chief witness was Charlene Thompson, who was also under indictment for the murder of Ann Wilson. She was subsequently tried and also convicted. Mrs. Thompson admitted being in the car that night and testified that she saw Flanagan jerk Ann out of the car and treat her in a rough manner. She heard Flanagan hit Ann and "thought she (Ann) was going to get beat up". Ann cried, "Why are you *Page 48 
doing this to me?" The next thing Mrs. Thompson heard or saw was Flanagan handing two bloody knives to her husband, who was sitting next to her in the front seat of the automobile. During the murder Mrs. Thompson stated that she had been sitting inside the car. She had a spot of blood on the bottom of her blue pants. Later that morning, after her husband had fallen asleep in their motel room, Mrs. Thompson called the police and reported Ann's murder.
Flanagan took the witness stand in his own defense and testified that Larry and Charlene Thompson killed Ann while he waited in the automobile. Larry Thompson did not testify. Thus the evidence is in direct conflict concerning Mrs. Thompson's participation, if any, in the murder.
 I
Flanagan contends that Mrs. Thompson was an accomplice and in the absence of sufficient testimony to corroborate her testimony his motion to exclude the State's evidence was due to be granted.
Following Yarber v. State, Ala. (Ms. June 14, 1978), this court recently discussed the law governing accomplices and corroboration. Jacks v. State, 364 So.2d 397 (Ala.Cr.App.), cert. denied, 364 So.2d 406 (Ala. 1978). Here we need only restate some of the controlling principles of law. The mere presence of a witness at the scene of a homicide, without more, is insufficient to show that witness's complicity in the crime.Jacks, 364 So.2d at 402. Except where the State's evidence undisputedly makes the witness an accomplice, the defendant has the burden of showing the witness's complicity. Jacks, 364 So.2d at 403. Whether a witness is an accomplice may be a question of law or fact. It becomes a question of law only where the court is clearly convinced by a preponderance of the evidence that the witness could have been indicted and convicted of the same charge for which the defendant is on trial and that the witness freely participated in the crime. Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for determination by the trial court. Jacks, 364 So.2d at 403. The fact that a witness was jointly indicted with the appellant does not raise a presumption that he was an accomplice. Jacks, 364 So.2d at 403. Where a witness denies participation in the crime, the issue of his being an accomplice is a disputed fact presenting a question for the jury despite the additional fact that the witness previously had been convicted for the identical crime for which the defendant is on trial. Jacks, 364 So.2d at 403, citing Yarber, supra. Under the same reasoning, the mere fact that a witness is subsequently convicted for the same offense for which the defendant is on trial will not make that witness an accomplice as a matter of law. Yarber, supra.
Applying these principles to this cause, Mrs. Thompson was not an accessory as a matter of law. She testified she was in the automobile when Flanagan stabbed Ann Wilson. Flanagan testified that he was in the car when Mr. and Mrs. Thompson committed the murder. The issue was one of fact for the jury.Yarber, supra; Jacks, supra.
Where the issue of whether the State's witness was an accomplice is for the jury, the denial of the accused's motion to exclude the State's evidence for insufficient corroboration is not error. Jacks, 364 So.2d at 404.
 II
During the cross examination of Dr. Ronald Dale Rivers, chief coroner and medical examiner for Jefferson County, defense counsel attempted to determine whether a contributing cause of Ann Wilson's death was an inflamed liver. The trial judge sustained the State's objection.
 "THE COURT: I sustain the objection. Mr. Hassinger, her medical history or habits hasn't got anything to do with this case.
 "MR. HASSINGER: If the liver was inflamed to such a degree that it was a contributing cause of death, it would be. *Page 49 
 "THE COURT: Contributing cause of death wouldn't matter if the knife wound killed her. That's the cause of death, legally."
Flanagan contends that the above statement of the trial judge was "distinct, harmful error".
The remarks of the experienced trial judge were quite proper. Dr. Rivers testified that the cause of death was "shock and hemorrhage due to multiple stab wounds" and that there were sixteen stab wounds (eight to the chest, four to the abdomen, and four to the arms), any of which "in and of itself could eventually have caused death without medical attention". He did state the deceased's liver was "unusual" because there was "hepatic triaditis . . . a mild chronic inflammation of the liver".
The law on contributing causes of death in a prosecution for homicide is clear.
 "Where, . . ., the wound inflicted by defendant upon the victim is dangerous to life, the fact that there are other contributing causes of death does not prevent such a wound from being the legal cause of death." Smith v. State, 354 So.2d 1167, 1170
(Ala.Cr.App.), cert. denied, 354 So.2d 1172
(Ala. 1978).
The unlawful act of the accused need not be the sole cause of death. "(T)he test of responsibility is whether the act of accused contributed to the death, and, if it did, he is not relieved of responsibility by the fact that other causes also contributed." 40 C.J.S. Criminal Law § 11 (1944). Thus where it appears that the death of the deceased was accelerated by the violence of the accused, his guilt is not extenuated because death might, and probably would, have been the result of the disease with which the deceased was afflicted at the time of the violence. State v. Morea, 2 Ala. 275 (1841); Barron v.State, 29 Ala. App. 137, 193 So. 190 (1940). To render a defendant guilty, it is not necessary that the blow given by him, or his wrongful act, was the sole cause of death. Huckabeev. State, 159 Ala. 45, 48 So. 796 (1909). The blow need not have been the sole efficient cause of death. Even if it was only a partial cause accelerating death, the defendant is nevertheless responsible. Harvey v. State, 15 Ala. App. 311,73 So. 200 (1916).
We interpret the remarks of the trial judge as merely a succinct statement of the law set forth above and not a comment upon the evidence or that the particular knife wounds in this case were, in fact, the legal cause of death. While his comment may be subjected to that interpretation, defense counsel made no objection or request that the judge instruct the jury on the meaning and import of his statement and should not now be heard to complain. Smith v. State, 335 So.2d 393, 397 (Ala.Cr.App.), cert. denied, 335 So.2d 397 and 398 (Ala. 1976); Dolvin v.State, 51 Ala. App. 540, 544, 287 So.2d 250 (1973).
 III
As his last argument for reversing his conviction, Flanagan contends that the trial court unduly limited the scope of his cross examination of Charlene Thompson. On appeal it is argued that defense counsel was attempting "to probe the extent of a pattern of physical abuse, mental duress, sexual abuse, and other indicators of the nature of the relationship existing between Charlene Thompson and her husband" in order to prove "the true state of (her) mind" on the day of the incident and whether her perceptions were colored by that relationship.
The first alleged instance of undue limitation of cross examination appears in the record as follows:
 "Q. (Defense Counsel): Has your husband ever beaten you or stabbed you before?
 "MR. BLACK (Assistant District Attorney): I object to that.
"THE COURT: I sustain the objection.
 "Q. Have you ever told the police what your husband had done to you?
"MR. BLACK: I object to that.
"THE COURT: Sustain the objection.
"Q. Did you have any black eyes on that day? *Page 50 
"A. Yes, I did.
"Q. How did you get those black eyes?
"A. My husband hit me.
"Q. Why did your husband beat you?
"MR. BLACK: I object to that.
"THE COURT: Sustain the objection.
 "Q. Had your husband beaten you because you had been fighting —
 "MR. BLACK: Well now, that's just what I've objected to.
"THE COURT: Sustain the objection.
 "MR. ANDERSON: Your Honor, if this witness was made to do certain things, I think it is relevant to this situation to bring out this testimony.
 "THE COURT: She can testify she did certain things because of certain things, but not why somebody did something to her, she may not testify to.
 "Q. Had your husband ever tried to make you fight another woman?
"MR. BLACK: I object to that.
"THE COURT: I sustain the objection.
A witness may not testify to the uncommunicated mental operation or intent of another. Fincher v. State, 211 Ala. 388,100 So. 657 (1924); Whigham v. State, 20 Ala. App. 129,101 So. 98 (1924); Humber v. State, 19 Ala. App. 451, 99 So. 68, cert. denied, 210 Ala. 559, 99 So. 73 (1924); Slayton v. State,27 Ala. App. 422, 173 So. 632 (1937); Armstead v. State,57 Ala. App. 459, 329 So.2d 150 (1976). Therefore, since the questions asked of the State witness on cross examination called for testimony as to the mental operation of another, that objection was properly sustained. McDonald v. State,340 So.2d 103 (Ala.Cr.App. 1976).
On cross examination of a different State witness, Deputy Sheriff Detective Paul Couch, the trial judge sustained the State's objections to several of the questions asked by defense counsel.
From the record it appears that defense counsel was cross examining the detective about a conversation had between Charlene Thompson and Sergeant James Earl Smith.
The witness testified that he was not present during the entire conversation between Sergeant Smith and Mrs. Thompson and that he "couldn't tell you exactly without refreshing myself with some written or taped part of it". The trial judge, after questioning the witness, determined that "(h)e didn't hear any of it. James Earl Smith would be the man you would need." Sergeant Smith never testified. Mrs. Thompson's statement was never offered in evidence.
Because the officer was not familiar with the conversation between Mrs. Thompson and Sergeant Smith the trial judge did not err in sustaining the State's objection. Lowery v. State,25 Ala. App. 529, 149 So. 726 (1933). It is fundamental that testimony about a matter should not be admitted unless it first appears that the witness has knowledge of such matter. McElroy, § 105.01.
We have searched the record for error and found none prejudicial to the appellant. Under the evidence his guilt or innocence was solely a question for the jury. Therefore the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.