[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 603 
Randy Turpin Bell, alias Randy Cole, was indicted for violating § 13A-5-40 (a)(2) of the Alabama Code, 1975, the capital offense of murder during a robbery. He was tried and found guilty by a Chilton County jury, which after a sentencing hearing recommended the death sentence. The trial court held a separate sentencing hearing and after weighing the aggravating and mitigating circumstances sentenced him to death.
On December 14, 1981, Charles Mims, the victim in this case, was visiting with Helen and Curtis Smith at their grocery store on Highway 22 West in Chilton County. After receiving a phone call from a black male, Mims told Mrs. Smith that he was going to meet "the cowman" at the West End Washeteria in about 30 minutes to discuss the purchase of a console television and some deer guns. Mrs. Smith testified that "the cowman" Mims was referring to were the two black males who drove a green and white Cadillac. Mims took out his wallet to count his money in their presence. The Smiths testified that Mims was carrying approximately seven hundred dollars at the time he left the store. He left the store in his pick-up truck at approximately 5:30 p.m. Witness Richard Smith testified that Mims was supposed to return to the Smiths' store to show him the deer guns. After waiting for Mims until 7:50 p.m., Smith left the store.
After leaving the Smiths' store, Mims went to visit Ray Anthony Pairrett at his home, arriving at approximately 6:00 p.m. He stayed for an hour, watching TV with Pairrett, and then left stating that he was going home. Pairrett expected Mims to come back to his house at 10:00 p.m. to watch the news, but Mims failed to return. *Page 604 
Michael Joe Hubbard testified that he and Randy Cole, the appellant, had visited Mims at his home a week before the murder, and that they were trying to sell him two shotguns and a rifle. Mims had refused to buy the guns and that angered the appellant. On December 14, 1981, Hubbard tried to call Mims at his home around noon and again at dusk. Hubbard testified that Cole, the appellant, had a television and some guns to sell Mims. Hubbard contacted Mims at the Smiths' grocery store and arranged a meeting at the West End Washeteria. Mims failed to arrive on time and appellant and Hubbard waited for him in Cole's car behind the washeteria. Around 7:00 p.m., they saw Mims driving towards his home. They pulled out behind Mim's truck and flashed their lights until Mims pulled over. Hubbard told Mims to follow them and they proceeded to a place in Chilton County known as the campgrounds.
At the campgrounds, Cole and Hubbard got out of Cole's car and Mims got out of his truck. Cole told Hubbard and Mims that the stuff was behind a building on the campground. Hubbard testified that he turned around and saw Cole, the appellant, holding a pistol to Charles's face. Hubbard asked Cole what he was doing and appellant told Hubbard to "shut up and be cool." Appellant told Hubbard to get the rope out of the car and tie Mims's hands together. Hubbard tied Mims's hands together very loosely so he would be able to free himself, but appellant discovered that and tied them tighter.
At this point, Hubbard testified that a car drove by and appellant was afraid that his green and white Cadillac would be recognized. Appellant then took Mims's wallet and put it into his pocket. Then he forced Mims into the trunk of his car. They drove into a rural area to an abandoned house.
Hubbard let Mims out of the trunk. Appellant led Mims into the woods, across a barbed wire fence, until they came to a trench. Hubbard testified that appellant pushed Mims into the trench and, holding the gun about a foot from his face, shot Mims twice in the head. Hubbard testified that he turned and ran back to the car. Mims never got up.
On the way back to town, appellant and Hubbard had two flat tires. They stopped and changed the first tire, but when the rear passenger side tire blew they continued to ride on it. Mrs. Mims, the victim's wife, testified that she saw appellant's car that night heading towards town and riding on a flat tire. Richard Smith also saw appellant's car heading towards town at around 7:50 and noticed that it had a flat tire.
Appellant went to visit a friend, Joe Austin, Jr., on that evening around 8:30 p.m. He was looking for a new tire for his car. Austin testified that appellant said that he had robbed Mims and showed him the proceeds of the robbery. Then appellant left to go buy a new tire.
Carol Joiner, appellant's former girlfriend, testified that she had driven by the campgrounds on the night of December 14, 1981, and had seen appellant's car and Mims's truck parked side by side. About fifteen minutes later she passed by again but only Mims's truck remained. She asked appellant about this and at first he claimed that he was in Atlanta that night. Later, he threatened her to keep quiet, telling her that she knew too much.
When Mims failed to return home, his wife called Mr. Smith and Mr. Pairrett and they went to search for him. A missing person report was filed with the police and a formal search began. The next day his pick-up truck was found at the campgrounds, but his body was never found. Hubbard testified that appellant had returned to the scene of the crime and had put Mims's body in the trunk of his car. Appellant took the body to an undisclosed location, put acid on it and buried it.
Appellant's car was later discovered at a used car dealership in Atlanta. Special Agent Gary Hilton of the Georgia Bureau of Investigation testified that he had been contacted by an agency in Alabama and had participated in the investigation of the *Page 605 
disappearance of Charles Mims. When he located the car he opened the trunk to see if the body was there and found that the trunk was sopping wet and that there was a strong smell of detergent. The contents of the car were removed and held until trial.
 I
The appellant asserts that the trial court committed reversible error in denying appellant's request that the State provide the names of all witnesses testifying for the State for the purpose of qualifying the jury during voir dire. In Peoplesv. State, 418 So.2d 935 (Ala.Crim.App. 1982), this court, per Presiding Judge Bowen, stated that "[a] defendant has no constitutional or statutory right to compel the pretrial discovery of the State's witnesses." Peoples, 418 So.2d at 937. On the basis of that holding, we find that the trial court did not err in refusing to order the State to reveal its witnesses.Thigpen v. State, 49 Ala. App. 233, 270 So.2d 666 (1972).
 II
Appellant contends that the trial court committed reversible error by allowing Michael Joe Hubbard, a witness to the murder, to give an opinion as to whether Charles Mims was alive or dead at the time he and appellant left him. Mr. Hubbard testified that the appellant shot Charles Mims twice in the head at a range of approximately one foot. He testified that the shots lit up the side of Mims's face and that in his opinion Mims was dead. C. Gamble, McElroy's Alabama Evidence § 128.10 (2) contains a long list of the bodily conditions to which a layman may testify. The conditions listed include that a person was suffering great pain, that a person was "in bad shape," or that a person was in a dying condition. We find no error in allowing a witness to a shooting to testify to his opinion that the victim was dead. Thomason v. State, 451 So.2d 401
(Ala.Crim.App. 1984). Dismukes v. State, 346 So.2d 1170
(Ala.Crim.App.), cert. denied, 346 So.2d 1177 (Ala. 1977).
 III
Appellant asserts that the trial court committed reversible error when it allowed the State's witness, Dr. Joseph Embry, a forensic pathologist, to answer a hypothetical question which assumed facts that were not in evidence or of which the witness had no actual knowledge. The prosecutor asked the following:
 "Q Doctor Embry, based on the following hypothesis I'm going to give you, I'd like you to present to us your opinion. If you assume that an individual was shot in the head from approximately twelve inches away by a hand gun, would you state whether or not that is capable of causing death."
Justice Faulkner summarized Alabama law in regard to expert testimony and hypothetical questions in White v. State,294 Ala. 265, 314 So.2d 857 (1975):
 "An expert may also give an opinion in response to a hypothetical question: the question must embrace facts supported by the evidence and relating to the matter upon which the expert opinion is sought. The facts may be proven or assumed; the hypothetical question is inadmissible if the factual foundation is nebulous. For the purpose of the question, the facts are assumed to be true. The truth of the facts assumed is for the jury; it must determine whether the basis upon which the hypothetical rests has been established. An accurate statement of the law is found in Harden v. State, 26 Ala. App. 94, 155 So. 719
(1933), where the general rule was stated that an expert may give an opinion upon relevant matters under inquiry and he may base that opinion solely upon a hypothetical question without any personal knowledge of the matter inquired about. The hypothetical question should properly embrace only the facts in evidence and not certain matters as to which there is no evidence tending to support it. Rational inferences that may be drawn from testimony, as well as the positive and direct testimony itself, may form the basis for *Page 606 
the question." White, 294 Ala. at 271-72, 314 So.2d at 863.
The question asked Dr. Embry was based on testimony given previously by Michael Joe Hubbard; therefore, the question did not assume facts that were not in evidence. A witness is not required to have personal knowledge of the facts in order to answer a hypothetical question. White v. State, 294 Ala. 265,314 So.2d 857 (1975). No error was committed in allowing this hypothetical question to be asked. Weaver v. State,407 So.2d 568 (Ala.Crim.App. 1981).
 IV
Appellant asserts that State's exhibits 17, 18 and 19, items which were removed from appellant's car, were improperly admitted into evidence because the State failed to establish a proper chain of custody. Officer Hilton, Special Agent with the Georgia Bureau of Investigation, testified that he located appellant's car at Silver Motors in Atlanta. He opened the trunk of the car and discovered various tools, a couple of bottles of cleaning agents, a spare tire, a can of oil, and an open box of .25 caliber automatic ammunition. He testified that these items were removed from the car by the Georgia State Crime Lab and held there until he picked them up to bring them to Clanton for the trial. He testified that the items removed from appellant's car had remained in his department's exclusive care, custody, and control, and that the items were in substantially the same condition as they were when he first found them in appellant's car.
Banks v. State, 448 So.2d 973 (Ala.Crim.App. 1984), citingSexton v. State, 346 So.2d 1174 (Ala.Crim.App.), cert. denied,346 So.2d 1180 (Ala. 1977), held that
 "`To warrant the reception of an object into evidence against an objection that an unbroken chain of custody has not been shown, it is not necessary that it be proved to an absolute certainty, but only to a reasonable probability, that the object is the same as, and not substantially different from, the object as it existed at the commencement of the chain.'"
Officer Hilton's testimony established a proper foundation for the admission of the items into evidence. Hoyett v. State,441 So.2d 1063 (Ala.Crim.App. 1983).
 V
Appellant argues that the trial court erred when it allowed photographs of the scene of the crime, made during daylight, into evidence. The testimony indicated that the crime occurred at night. Arnold v. State, 348 So.2d 1092, 1094, 1095
(Ala.Crim.App.), cert. denied, 348 So.2d 1097 (Ala. 1977), states the general rule "that photographs are admissible in evidence if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, to corroborate or disprove some other evidence offered or to be offered. Their admission is within the sound discretion of the trial judge." "Photographs are not rendered inadmissible when conditions have changed and are not exactly the same as they were at the time when the incident occurred when the differences are immaterial and sufficiently explained to the jury." Donner v. State, 409 So.2d 461, 465
(Ala.Crim.App. 1982).
We are asked to hold that, when a crime occurs in darkness, only photographs made in darkness may be admitted into evidence. We find this contention violative of reason and common sense.
 VI
Appellant argues that his motion to quash the indictment should have been granted because the statute upon which the indictment is predicated is unconstitutional. He contends that the State allows the trial court too much discretion in determining the sentence imposed on the defendant. In Proffittv. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), the United States Supreme Court upheld the constitutionality of a Florida statute which is very similar to the one in question. In Florida, as in Alabama, the jury gives the trial court an advisory verdict, but it is the trial judge who actually imposes the sentence. *Page 607 
The court held "that judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases." Proffitt, 428 U.S. at 252, 96 S.Ct. at 2967.
Appellant also asserts that the death penalty is unconstitutional because, he says, it constitutes cruel and unusual punishment. The authorities do not support this argument. In Gregg v. Georgia, 428 U.S. 153, 169,96 S.Ct. 2909, 2923, 49 L.Ed.2d 859, 872 (1976), the United States Supreme Court held that "the punishment of death does not invariably violate the Constitution."
 VII
Appellant contends that the trial court abused its discretion in denying appellant's motion for individual voir dire and for sequestration of jurors during voir dire.
In Robinson v. State, 430 So.2d 883 (Ala.Crim.App. 1983), this court was faced with a very similar situation. The defendant asserted that he should be permitted to question each prospective member of the jury individually outside the presence of the other jurors. We held that "the matter of how the voir dire of the jury venire will be conducted is within the discretion of the trial court and there was no abuse in this instance." Robinson, 430 So.2d at 887. A jury is not required to be sequestered until its members have been selected and sworn. Pennington v. State, 369 So.2d 886 (Ala.Crim.App. 1979).
The appellant in this case had ample opportunity to question the prospective jurors. We find no abuse in the discretion of the trial court.
 VIII
Appellant asserts that the trial court erred in denying his motion for acquittal, arguing that the State failed to present sufficient evidence to support a verdict of guilty. Appellant says that his conviction was based on the uncorroborated testimony of Michael Joe Hubbard, an accomplice, in violation of § 12-21-222 of the Code of Alabama 1975. Alabama Code, 1975, § 12-21-222, states:
 "A conviction of a felony cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the commission of the offense, and such corroborative evidence, if it merely shows the commission of the offense or the circumstances thereof, is not sufficient."
In order to invoke the protection of § 12-21-222, the evidence presented must show that the witness is an accomplice.Washington v. State, 401 So.2d 236 (Ala.Crim.App.), writ denied, 401 So.2d 241 (Ala. 1981). "Where there is no conflict in the testimony, the question of whether a witness is an accomplice is a question of law for the determination by the trial court." Jacks v. State, 364 So.2d 397, 403
(Ala.Crim.App.), cert. denied, 364 So.2d 406 (Ala. 1978), Cumbov. State, 368 So.2d 871 (Ala.Crim.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979). The appellant had the burden of showing the witness's complicity, unless the State's evidence undisputedly made the witness an accomplice. Russell v. State,365 So.2d 343 (Ala.Crim.App. 1978), Nelson v. State,405 So.2d 392 (Ala.Crim.App.), reversed and remanded for new sentencing,405 So.2d 401 (Ala. 1981). Appellant must prove more than the presence of the witness at the scene of the crime in order to establish the witness's complicity. Magouirk v. State, 49 Ala. App. 420, 272 So.2d 625 (1973); Flanagan v. State, 369 So.2d 46
(Ala.Crim.App. 1979).
Appellant failed to present any evidence to establish the witness's complicity. Hubbard testified that he was forced by the appellant to tie Mims's hands behind his back and that he had tied them loosely in the hope that Mims would be able to escape. He testified that he did not know that the appellant was going to rob or kill Mims and that he did not receive any of the *Page 608 
money that appellant took from Mims's wallet. Since there is no conflict in the testimony, whether or not Hubbard was an accomplice was a matter of law for the trial court to decide.Pryor v. State, 47 Ala. App. 706, 260 So.2d 614 (1972). A review of the testimony also leads us to the conclusion that Hubbard was not an accomplice.
 IX
Appellant contends that the trial court erred in not instructing the jury as to the law of accomplices. Since Hubbard was not an accomplice, the court was not required to instruct the jury on that subject. Russell v. State,365 So.2d 343 (Ala.Crim.App. 1978).
 X
We have reviewed other alleged errors, but find that the allegations merit neither reversal nor opinion.
 XI
As required by Beck v. State, 396 So.2d 645 (Ala. 1980), and § 13A-5-53, Code of Alabama 1975, we make the following determinations. (1) Randy Turpin Bell was indicted and convicted for violating § 13A-5-40 (a)(2), an offense which is punishable by death. (2) Similar crimes are being punished by death. Colley v. State, 436 So.2d 11 (Ala.Crim.App. 1983). (3) The sentence of death is appropriate for the defendant and the type of crime committed. (4) There is no evidence that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. (5) We have independently weighed the aggravating and mitigating circumstances of this case and we agree with the decision of the trial court[1] that death is the proper sentence in this case. (6) Considering the crime and the defendant, we do not find that the penalty of death is excessive or disproportionate.
We have searched the record in both the guilt and the sentence phases of the proceedings and have found no errors that adversely affected the rights of the defendant. The judgment is due to be affirmed.
AFFIRMED.
All the Judges concur.
[1] The trial court's findings of aggravating and mitigating circumstances are set out in an appendix to this opinion.
 APPENDIX IN THE CIRCUIT COURT OF CHILTON COUNTY, ALABAMA. STATE OF ALABAMA VS. RANDY COLE, Defendant. CASE NUMBER CC-83-35 COURT'S FINDING AS TO EXISTENCE OF AGGRAVATING AND MITIGATING CIRCUMSTANCES
The Court finds with respect to the aggravating circumstances, 13A-5-49:
1. The Court finds that there is no evidence that this offense was committed by a person under sentence of imprisonment.
2. The Court finds there is no evidence that the defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person.
3. The Court finds no evidence that the defendant knowingly created a great risk of death to many persons.
4. The Court finds that the capital offense was committed while the defendant was engaged in the commission of robbery.
5. The Court finds no evidence that the capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.
6. The Court finds no evidence that the capital offense was committed for pecuniary gain. It could be argued that a robbery is a pecuniary gain, but the Court is *Page 609 
of the opinion this section is intended to cover the hiring of what is commonly known as "hit men."
7. The Court finds that the capital offense was not committed to disrupt or hinder the lawful exercise of any governmental function or the enforcement of laws.
8. The Court finds that while all capital offenses are heinous, or atrocious or cruel to some extent, the offense of which this defendant has been found guilty was not especially heinous, atrocious or cruel, compared to other capital offenses.