[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 344 
Jeffrey Carden was indicted for the offense of manslaughter, in violation of § 13A-6-3, Code of Alabama 1975. The jury found Carden guilty of manslaughter, as charged in the indictment, and he was sentenced to a 10-year term of imprisonment. Six issues are raised on appeal.
 I
Carden contends that the trial court erred in denying his application for treatment as a youthful offender. In particular, Carden argues that the trial court denied his petition based solely upon the seriousness of the charge of manslaughter because 1) there is nothing in the record revealing any information made available to the trial court before the court's decision, and 2) no testimony was taken and there is nothing in the record to indicate that any argument of counsel was presented before to the trial court's decision. *Page 345 
The trial court has almost absolute discretion in ruling on applications for youthful offender status, and the actions of the trial judge are presumptively correct in the absence of a showing to the contrary. Morgan v. State, 363 So.2d 1013
(Ala.Cr.App. 1978).
A trial judge is not required to recite his reasons for denying an application for youthful offender status in his order denying the application. Arrington v. State,513 So.2d 40, 41-42 (Ala.Cr.App. 1987). It is sufficient if the order of denial reflects that some investigation, examination, or inquiry was conducted before the application for youthful offender status was denied. Talley v. State, 504 So.2d 741,742-43 (Ala.Cr.App. 1987). A formal hearing on an application for youthful offender status is not required. Garrett v. State,440 So.2d 1151, 1152 (Ala. 1983). Where it does not affirmatively appear that the trial court's decision was arbitrary or that it was made without any examination or investigation, there is no basis for overturning the trial court's decision. Wilson v. State, 563 So.2d 11, 12
(Ala.Cr.App. 1989).
In the instant case, the record shows that an investigation was ordered on Carden's petition, that a youthful offender investigation report was prepared, that a hearing was held on the petition, and that the petition then was denied, after investigation. Carden has not included in the record on appeal a transcript of this hearing, a copy of the youthful offender report, or any other documents that may have been submitted at the hearing.
Where the appellant fails to include pertinent portions of the proceedings in the record on appeal, this court may not presume a fact not shown by the record and make it a ground for reversal. Montgomery v. State, 504 So.2d 370, 372 (Ala.Cr.App. 1987).
Moreover, in Carter v. State, [Ms. CR-90-630, Jan. 31, 1992], 1992 WL 37391 (Ala.Cr.App. 1992), this court held that the minute entry recitation that a "hearing on a youthful offender application was conducted" had to be accepted as true because there was nothing in the record to substantiate Carter's claim that an appropriate hearing was not held.
We, therefore, hold that because the minute entry recitations in this case reflect that a youthful offender report was ordered, that a hearing was held wherein Carden was present with his attorney, and that the application was denied after investigation, the record in this case does not reveal any error in the denial of Carden's application for youthful offender status.
 II
Carden contends that he was denied his constitutional right to a fair trial by the trial court's decision to allow a State's witness to testify before opening statements.
Prior to opening statements by counsel, the court instructed the jury as follows:
 "There is a witness that is to testify that is scheduled for surgery in the morning. Ordinarily the course of a trial goes — opening statements, presentation of evidence, closing argument and then I'll give you the law. Opening statements are where each party tells you what they believe the case will be. That's ordinarily the first stage. Because of this circumstance, this witness that has an injury to a knee or something, I understand occurred yesterday, we're going to change that procedure a little bit and allow that witness to testify first so that we can get his testimony in today, and then we'll come back in the morning and let each of the parties make their opening statements to you. Will any of you have any problem with that, with following this case by taking this witness out of the ordinary turn that the witness should appear in? All right, you can go ahead if you will, and remember the oath that you took this morning, the second oath that you took from the Clerk that you'll try this case or any case and base your verdict upon the evidence and the law. You are under that oath to try this case. Call your witness.
 "MR. WEATHERS: Your Honor, the State will call Lane Easson to the stand. *Page 346 
 "THE COURT: Mr. Roby, did you have something you wanted to say for the record on this point?
 "MR. ROBY: Yes, Judge, the defendant objects to the change in the order of the trial. We think that procedural safeguards are there for a reason and we would object to changing it.
"THE COURT: All right. Overruled."
Although the specific constitutional issue presented herein was raised for the first time in Carden's motion for new trial, we nevertheless find the above-quoted objection to the out-of-turn testimony of Easson sufficient to preserve this issue for appeal.
A trial court is vested with discretion in the conduct of a trial, and appellate courts will not interfere with the exercise of that discretion unless it clearly appears that there has been an abuse of discretion. Shelton v. State,384 So.2d 869, 870 (Ala.Cr.App.), cert. denied, 384 So.2d 871 (Ala. 1980). The time and manner of introducing and closing evidence are within the discretion of the trial judge. Shelton v. State,supra, 384 So.2d at 870.
In the case sub judice, Carden was indicted for manslaughter in December 1988, when the car Carden was driving collided head-on with a car driven by the victim, Cephas Wynn. Dr. Joerg Pirl, the toxicologist who performed the analyses and evaluations of Carden's blood-alcohol level at the time of the collision, moved out of state before the case was set for trial, and his absence necessitated numerous continuances until the case was specially set for trial on September 23, 1991, to allow Dr. Pirl to travel to Alabama to testify.
On the day before the trial was to begin, State's witness Officer Lane Easson suffered an injury, and he was scheduled for surgery on the morning of the second day of trial.
On the first day of trial, the jury was not struck until mid- or late afternoon, and it did not appear to the trial court that there would be time for Officer Easson to testify that day if opening statements were then made.
Under these special circumstances, we hold that the trial court did not abuse its discretion in allowing Easson to testify on the first day of trial and in moving opening statements for both parties until the following morning. Easson, who was formerly employed as an emergency medical technician with the Suburban Ambulance Service, treated Carden, the victim, and other persons injured at the scene of the collision. Easson was certainly a key witness for the State, and the trial court prudently rearranged the normal trial order to accommodate this witness's medical problem. The propriety of the trial court's decision is buttressed by the fact that another key witness for the State had flown a great distance to testify at that time, and, the case had been continued on numerous occasions that this witness could testify.
We note, moreover, that Carden has failed to show any prejudice resulting from the trial court's permitting Easson to testify before opening statements. Rule 45, Ala.R.App.P. Defense counsel waived his right to make an opening statement on the morning following Easson's testimony, and there is nothing in the record to indicate that defense counsel ever intended to make an opening statement before the State's presentation of its case.
The trial court's decision to allow Easson to testify before opening statements was therefore proper under the special circumstances of this case.
 III
Carden contends that the trial court erred in admitting four photographs of the victim taken at the funeral home on the day he died. Carden's claim that these photographs should not have been admitted because they contained unexplained incisions and other injuries that were the result of medical procedures performed upon the victim.
The appellant bears the burden of bringing the record before the appellate court. Montgomery v. State, 504 So.2d 370
(Ala.Cr.App. 1987). An appellate court may only consider the facts contained in the record on appeal, and it may not presume *Page 347 
any facts not shown by that record and make them a ground for reversal. Williams v. State, 412 So.2d 1274 (Ala.Cr.App. 1982).
Because Carden has not included the photographic evidence he objects to in the record on appeal, the record does not reflect the factual basis for his argument, and there is nothing for this court to review. Gilbert v. State, 401 So.2d 342
(Ala.Cr.App. 1981).
 IV
Carden contends that the trial court erred in submitting the victim's death certificate to the jury during its deliberations because that certificate was never formally offered nor admitted into evidence.
This court can review only those matters on which adverse rulings have been invoked in the trial court. Cano v. State,543 So.2d 724 (Ala.Cr.App.), cert. denied, 493 U.S. 934,110 S.Ct. 325, 107 L.Ed.2d 315 (1989). Issues may not be raised for the first time on appeal. Johnson v. State, 480 So.2d 14
(Ala.Cr.App. 1985).
This issue was never presented to the trial court. We note that Carden filed a motion for a judgment of acquittal, which listed 10 grounds, and a motion to set aside the verdict and for a new trial, which listed 31 grounds. In neither of these post-trial motions was the issue of the submission of the death certificate to the jury raised. The record, moreover, does not indicate whether the death certificate was in the jury room during the jury's deliberations. This issue is therefore procedurally barred because it is raised for the first time on appeal.
 V
Carden contends that the prosecution presented insufficient evidence to sustain the verdict because 1) the State failed to prove that he caused the death of the victim, Cephas Wynn, and 2) assuming arguendo that he had caused Wynn's death, the State failed to prove that he acted recklessly in causing Wynn's death.
Whenever the sufficiency of evidence is in question, the evidence must be reviewed in the light most favorable to the State. Any conflicting evidence presents a jury question that is not subject to review on appeal so long as the State's evidence establishes a prima facie case. In determining whether the State presented a prima facie case, an appellate court must accept as true the evidence introduced by the State, accord the State all legitimate inferences from that evidence, and consider the evidence in the light most favorable to the State.Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied,368 So.2d 877 (Ala. 1979).
In a case of circumstantial evidence, the test is whether the jury might reasonably find that the evidence excludes every reasonable hypothesis but guilt — not whether the evidenceactually excludes such a hypothesis, but whether the jury might reasonably so conclude. Cumbo. Only where there is no evidence from which a reasonable mind might fairly conclude guilt beyond a reasonable doubt may a case be taken from the jury. German v.State, 429 So.2d 1138 (Ala.Cr.App. 1983).
The offense of manslaughter is defined in § 13A-6-3, Code of Alabama 1975, in pertinent part, as follows: "(a) A person commits the crime of manslaughter if: (1) He recklessly causes the death of another person."
The term "recklessly" is defined in § 13A-2-2(3), Code of Alabama 1975, as follows:
 "(3) Recklessly. A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstances exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates a risk but is unaware thereof solely by reason of voluntary intoxication, as defined in subdivision (e)(2) of *Page 348 
section 13A-3-2, acts recklessly with respect thereto."
The State's evidence established that Carden was driving a pickup truck on a busy highway in a highly intoxicated condition at approximately 4:00 p.m. on August 26, 1988. The State's evidence also established that Carden had drunk more than the equivalent of six beers and that the level of alcohol in his bloodstream would cause considerable impairment of judgment and moderate-to-severe impairment in the operation of a motor vehicle, including visual, reflex, and motor capabilities.
A witness who followed Carden south on U.S. Highway 31 in Decatur for 15 or 20 minutes until shortly before the collision occurred testified that Carden was speeding, that he ran off the side of the road 3 or 4 times, that he almost bumped into at least 2 vehicles that he passed, and that he almost hit a bridge abutment as he passed over the bridge.
At about 4:40 p.m., Carden was approaching the intersection of Highway 31 and Highway 67, still proceeding south on Highway 31. The traffic was heavy because it was rush hour. The traffic signal at the intersection was red for traffic on Highway 31, and traffic was backed up in both directions.
The victim, 61-year-old Cephas Wynn, was the first car stopped in the right-hand lane of the northbound traffic on Highway 31. He was driving an older-model Chevrolet automobile. Next to him in the left northbound lane was State's witness Michael Henning, who was driving an 18-wheel truck. State's witness Vivian Clements was driving the car immediately behind Mr. Wynn. State's witness John Brown was immediately behind Clements, driving a pickup truck. State's witness David Allen was stopped in the driveway of Reagin Mobile Homes, about one-quarter mile north of the intersection and adjacent to the southbound lanes of traffic. He was waiting for the traffic to clear in order to pull onto the highway heading south.
All of the foregoing witnesses testified that the traffic signal at the intersection changed to green for traffic on Highway 31 and the northbound traffic began to move. Henning and Wynn were still side-by-side as they approached the Burningtree Restaurant, which was about one-quarter mile north of the intersection and just slightly south of Reagin Mobile Homes. At that time, Carden, who was travelling south on Highway 31, turned and crossed over the yellow lines into the northbound lanes of traffic. Henning slammed on his brakes when it appeared that Carden was coming right at him. Carden then passed in front of Henning's truck and collided almost head-on with Mr. Wynn's automobile, knocking both vehicles part of the way off the right side of the road. Clements swerved left to avoid hitting them, and she collided with the side of Henning's truck. Brown testified that when Carden turned in front of the northbound traffic, Carden was travelling at a high rate of speed, and that Carden's pickup was up on two wheels as it passed in front of Henning's truck.
Allen testified that he looked in both the pickup truck and Wynn's car shortly after the collision and that Wynn was bleeding visibly from his legs and appeared to be unconscious, and that Carden appeared to have some kind of head injury.
Emergency medical technician Lane Easson testified that when he arrived at the scene moments after the collision, he observed a strong odor of alcohol on Carden's breath and that Carden told him that he had consumed four or five beers that day. Easson then formed the opinion that Carden was under the influence of alcohol.
Officer Kevin Hunter of the Decatur Police Department testified that he arrived at the scene within a few minutes of the collision and that he detected the odor of alcohol on Carden's breath, and that he observed that Carden's eyes were red and glossy and that Carden's speech was somewhat slurred. Hunter then placed Carden under arrest for driving under the influence.
Hunter testified that he then followed the ambulance containing Carden and Wynn to Decatur General Hospital and that Carden consented to submit to a blood alcohol test. Later testing at the department *Page 349 
of forensic sciences of the blood sample that was drawn in the emergency room moments after the collision revealed that Carden's blood contained 0.14% ethyl alcohol.
Dr. Joerg Pirl, the former chief of toxicology of the Alabama Department of Forensic Sciences, testified that a person with a 0.14% blood alcohol level would have considerably impaired judgment, including severe impairment of the ability to judge time, distances, space, speed, and his own personal capabilities, moderately to severely impaired vision, including difficulty tracking and reduced visual acuity, a lengthened reflex time, and some degree of impairment in motor response and motor coordination.
Dr. David Khoo, an attending physician to Wynn and an orthopedic surgeon, testified that Wynn suffered multiple injuries in the collision, including a fractured jawbone, an open fracture of the left kneecap, a fracture of his right tibia, a central fracture dislocation of his hip, and abdominal and chest injuries, including broken ribs and bruises over his chest and abdomen. Wynn was in severe pain, trauma and distress, and his condition was classified as critical upon his arrival at the hospital. Because of the open fracture of his kneecap and the seriousness of the hip fracture, Wynn had to be taken to surgery that day. According to Dr. Khoo, Wynn did well the first day he was in the intensive care unit after surgery, but he then suffered cardiopulmonary complications and suffered a heart attack on the second day. Wynn died on August 29, 1988.
Dr. Khoo further testified that he executed a death certificate on Cephas Wynn and that he listed on the certificate three causes of death: 1) multiple fractures, 2) acute myocardial infarction and, 3) cardiopulmonary arrest. Dr. Khoo also testified that although he could not say to a mathematical certainty that the injuries Wynn sustained in the collision caused his heart attack, the injuries may have contributed to the heart attack.
Applying the standards of review to the foregoing evidence, we hold that the State presented a prima facie case of "reckless" manslaughter.
Carden clearly created a substantial and unjustifiable risk of someone being killed when he turned his truck into moving traffic on a busy highway. Although Carden may have been unaware of this risk by virtue of voluntary intoxication, under § 13A-2-2(3), Code of Alabama 1975, he is nevertheless deemed to have acted "recklessly" with respect to the creation of the risk.
Moreover, Carden's reckless acts of turning his vehicle into oncoming traffic and colliding head-on with the vehicle driven by the victim, Cephas Wynn, "caused" the death of Mr. Wynn within the meaning of § 13A-6-3(a)(1), Code of Alabama 1975.
The wound or wounds inflicted by a defendant need not be the sole cause of death, only a partial cause, or a contributing factor that accelerated death. The fact that there are other contributing causes of death does not prevent the wound or wounds inflicted by the defendant from being the legal cause of death — the other contributing causes of death may precede, be synchronous with, or follow the commission of the offense charged. Greer v. State, 475 So.2d 885 (Ala.Cr.App. 1985);Flanagan v. State, 369 So.2d 46 (Ala.Cr.App. 1979); Smith v.State, 354 So.2d 1167 (Ala.Cr.App. 1977), cert. denied,354 So.2d 1172 (Ala. 1978).
The other contributing cause need not itself be a result of the injury caused by the defendant. Smith v. State, supra,354 So.2d at 1169-70 (possible pre-existing disease). Whatever may have been the physical condition of Wynn at the time of the collision cannot benefit Carden because an accused must take his victim as he finds him. Flanagan v. State, supra,369 So.2d at 49.
The State is not required to dispel every possible doubt, nor is it required to show that some other conceivable cause of death did not actually cause death. Finley v. State,405 So.2d 161 (Ala.Cr.App. 1981). All that is required is that there be evidence sufficient to convince the jury *Page 350 
that the wounds inflicted by the accused were dangerous and contributed to or accelerated the death of the deceased — it is not necessary to show that death inevitably would have followed from those wounds alone. Turner v. State,409 So.2d 922 (Ala.Cr.App. 1981).
Dr. Khoo specifically testified that on Wynn's death certificate, Dr. Khoo listed the multiple fractures that Wynn sustained in the collision as the number one cause of Wynn's death. The only possible question raised by Dr. Khoo's testimony concerned whether the injuries sustained in the collision contributed to the heart attack, not whether those injuries contributed to Wynn's death.
The fact that there were two other contributing causes of death, myocardial infarction and cardiopulmonary arrest, does not prevent the injuries sustained in the collision from being the legal cause of Wynn's death. Hence, the State's evidence sufficiently established that Carden "recklessly caused" Wynn's death, because it is irrelevant whether the other contributing causes resulted from the injuries sustained in the collision or from a pre-existing disease.
 VI
As his final issue, Carden contends that he was denied a fair trial because the prosecutor failed to disclose exculpatory medical information and documentation on the victim, Cephas Wynn, which allegedly refuted the State's claim that the victim's death was caused by the collision.
At the outset, we note that the record contains no discovery motion, and defense counsel at trial, who had almost three years to prepare for trial, never requested the victim's medical records from the prosecutor.
Carden raised this issue for the first time in a motion for new trial and subpoenaed the district attorney and the prosecutor's file in this case for the hearing. The prosecutor moved to quash the subpoena, and the trial court, in the hearing on the new trial motion, instructed Carden's new counsel to file a separate motion to require the district attorney to disclose this allegedly exculpatory information and quashed the subpoena. Defense counsel then filed a separate motion to require the district attorney to disclose this allegedly exculpatory information. No hearing, however, was held on this subsequent post-trial motion, and the motion was deemed denied by operation of law after 60 days, pursuant to Rule 13(d), Ala.R.Cr.P.Temp.
Where the appellant fails to include pertinent portions of the proceedings in the record on appeal, this court may not presume a fact not shown by the record and make it a ground for reversal. Montgomery v. State, 504 So.2d 370, 372 (Ala.Cr.App. 1987).
Carden failed to obtain a hearing on his Brady[1] motion wherein the trial court could inspect the allegedly exculpatory medical record in camera and determine whether 1) the prosecutor suppressed evidence; 2) the evidence was favorable to Carden or exculpatory; and 3) the evidence was material. Donahoo v.State, 552 So.2d 887, 895 (Ala.Cr.App. 1989).
Without these rulings in the record, this court has nothing to review. Accordingly, this issue has not been properly preserved for appeal.
The judgment of the circuit court is affirmed.
The foregoing opinion was prepared by the Honorable JAMES H. FAULKNER, a former Alabama Supreme Court Justice, and his opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur.
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215
(1963). *Page 351