BOLIN, Justice.
Roosevelt James Upshaw petitions this Court for certiorari review of the judgment of the Court of Criminal Appeals affirming the Russell Circuit Court’s order denying Upshaw’s petition for a writ of habeas corpus. In his habeas corpus petition, Upshaw alleged that the Alabama Department of Corrections (“ADOC”) had erred in calculating the term of his sentence after he was arrested while on parole in that ADOC unlawfully denied him credit under § 15-22-32(a), Ala.Code 1975, for the time he was incarcerated in Georgia.[1] We affirm.

Facts and Procedural History

On August 1, 1986, Upshaw pleaded guilty to 1 count of first-degree robbery and 3 counts of third-degree robbery and was sentenced to 15 years’ imprisonment for the first-degree-robbery conviction and for 2 of the third-degree-robbery convictions; those 3 sentences were to be served concurrently. Upshaw was also sentenced to 20 years’ imprisonment for the final third-degree-robbery conviction, which sentence was to run consecutively to the other 3 sentences. In 1993, Upshaw was released on parole to Georgia pursuant to the Interstate Compact for the Supervision of Parolees and Probationers.[2] While Up-shaw was on parole, he was arrested on new charges in Georgia on December 24, 1994. On January 23, 1995, the Alabama Board of Pardons and Paroles (hereinafter “the Parole Board”) declared Upshaw delinquent on his parole. ADOC filed a de-tainer against Upshaw while he was incarcerated in Georgia. Upshaw pleaded guilty to the charges in Georgia and was sentenced to a total of 26 years in prison.[3] The Georgia court ordered that his sentences be served concurrently with the sentences imposed following his parole revocation in Alabama. According to Up-shaw, the Georgia Superior Court issued an order in 1997 providing for his immediate release to Alabama.
Upshaw was granted parole in Georgia on September 24, 2009. Because ADOC had issued a detainer for Upshaw, he was returned to the custody of ADOC that same day. Upshaw was informed that his earliest release date was July 3, 2010. Subsequently, Upshaw was informed that his earliest release date was March 4, 2025, because ADOC was not giving him *72 credit for the 14 years, 8 months, and 1 day he spent incarcerated in Georgia. Instead, ADOC considered the time Upshaw spent incarcerated in Georgia as “dead time.”
On August 25, 2010, Upshaw filed a pro se petition for a writ of habeas corpus in the Russell Circuit Court, arguing that ADOC had unlawfully denied him credit for the time he was incarcerated in Georgia. The circuit court ordered that ADOC be served with notice. ADOC did not respond. An attorney filed a notice of appearance on behalf of Upshaw and subsequently filed a memorandum in support of Upshaw’s habeas corpus petition. On November 28, 2011, the circuit court denied Upshaw’s petition. Upshaw appealed. The Court of Criminal Appeals affirmed the circuit court’s decision in an unpublished memorandum. Upshaw v. State (No. CR-11-0494, August 17, 2012), — So.3d - (Ala.Crim.App.2012) (table). Upshaw filed an application for rehearing, which was overruled. Upshaw timely sought certiorari review with this Court.

Discussion

Upshaw argues that the narrow question presented here is whether § 15-22-32, Ala.Code 1975, requires ADOC to credit an Alabama inmate with the time served in custody in Georgia after his parole is transferred to “Georgia’s supervision under the Interstate Compact and [the parolee is] later arrested and declared delinquent on the basis of new criminal activity under circumstances where he is ordered by both Alabama and Georgia authorities to be returned to begin serving time on his Alabama revocation.” (Reply brief, p. 2.) Upshaw argues that, pursuant to the plain language of § 15-22-32(a), the event triggering when a parolee is to be considered serving time on his sentence is a declaration that the parolee is delinquent, coupled with the parolee’s arrest. Upshaw contends that, because he was under arrest in Georgia when he was declared delinquent by ADOC and a detainer issued, he is entitled to credit for the days between the date he was declared delinquent on his parole in Alabama and the date he was returned to Alabama. Upshaw argues that the Court of Criminal Appeals erred in affirming ADOC’s calculation of his sentence on the basis that the time Upshaw spent in custody in Georgia was “dead time” and that he did not resume serving time on his Alabama sentences until he was physically returned to custody in Alabama. Upshaw states that the Court of Criminal Appeals in addressing this issue concluded that “because [Upshaw’s] arrest and incarceration in Georgia was not related to his delinquent parole status in Alabama, he is not entitled to credit for the time he served in Georgia.” Upshaw asserts that the “related to” requirement read into § 15-22-32 by the Court of Criminal Appeals is not supported by the plain language of the statute.
ADOC asserts that Upshaw was arrested in Georgia on December 24, 1994, on various new charges including robbery and that he was not arrested at that time “as a delinquent parolee” under § 15-22-32. Instead, Upshaw was declared delinquent on January 23, 1995, and was ultimately not arrested “as a delinquent parolee” until he was released on parole from the Georgia Department of Corrections on September 24, 2009, because the detainer did not spring into action until Upshaw was released from the Georgia prison. ADOC contends that a parolee begins receiving credit toward an existing sentence after delinquency is declared and that parolees are entitled to credit following a delinquency declaration only when the cause of their arrest and incarceration is their status as a delinquent parolee. Up- *73 shaw argues that ADOC’s interpretation of § 15-22-32 would effectively delete the phrase “as a delinquent parolee,” violating, he says, rules of statutory construction and creating insurmountable practical problems because most delinquent parolees are arrested for new criminal violations and not for technical violations of their parole.
Upshaw also argues that the Court of Criminal Appeals’ interpretation of § 15-22-32 invites constitutional error because it discriminates between out-of-state parolees who are declared delinquent based on a new arrest and similarly situated in-state parolees based solely on geography. Up-shaw argues that the geographical problem implicates equal protection because, he says, the interpretation of when a parolee has been “rearrested as a delinquent parolee” turns on a question of geography. He argues that, to the extent there is any ambiguity about the meaning of the words “as a delinquent parolee,” the ambiguity must be resolved in the defendant’s favor. ADOC contends that Upshaw’s equal-protection argument is based on a bare assertion as to the alleged disparate treatment of in-state parolees and out-of-state parolees.
Section 15-22-32(a) provides:
“(a) Whenever there is reasonable cause to believe that a prisoner who has been paroled has violated his or her parole, the Board of Pardons and Paroles, at its next meeting, shall declare the prisoner to be delinquent, and time owed shall date from the delinquency. The warden of each prison shall promptly notify the board of the return of a paroled prisoner charged with violation of his or her parole. Thereupon, the board, a single member of the board, a parole revocation hearing officer, or a designated parole officer shall, as soon as practicable, hold a parole court at the prison or at another place as it may determine and consider the case of the parole violator, who shall be given an opportunity to appear personally or by counsel before the board or the parole court and produce witnesses and explain the charges made against him or her. The board member, parole revocation hearing officer, or a designated parole officer, acting as a parole court, shall, within a reasonable time, conduct the parole revocation hearing to determine guilt or innocence of the charges and may recommend to the board revocation or reinstatement of parole. Upon revocation of parole, the board may require the prisoner to serve out in prison the balance of the term for which he or she was originally sentenced, calculated from the date of delinquency or the part thereof as it may determine. The delinquent parolee shall be deemed to have begun serving the balance of the time required on the date of his or her rearrest as a delinquent parolee.”
(Emphasis added.)
The Court of Criminal Appeals has addressed § 15-22-32(a) in two recent cases. In Sundberg v. Thomas, 13 So.3d 43 (Ala.Crim.App.2009), the defendant was convicted of first-degree robbery and was sentenced to 20 years’ imprisonment. He was paroled in July 1993 and was rearrested in New Hampshire in August 1993. He was declared delinquent in September 1993 and was returned from New Hampshire to Alabama in September 1993. The Court of Criminal Appeals held that the defendant was entitled to credit for time between the date he was declared delinquent and the date he was returned to Alabama under § 15-22-32. “Based on the plain language of § 15-22-32(a), Ala.Code 1975, because [the defendant] had been arrested at the time he was declared delinquent, he was entitled to credit for the 15 days between the date he was declared delinquent *74 and the date he was returned to Alabama.” 13 So.3d at 45.
In Writesman v. Alabama Department of Corrections, 54 So.3d 450 (Ala.Crim.App.2010), the defendant was sentenced to 18 years’ imprisonment. He was paroled in 1992 and was declared delinquent in March 1993 for failure to report to his parole officer. He was subsequently arrested in Tennessee in December 1996 for failing to report and was returned to Alabama. He escaped from work release in September 2000. He was captured and placed in jail in Florida in 2001 and was returned to Alabama in January 2002. The Court of Criminal Appeals held that the defendant was entitled to credit for the time between the date he was imprisoned in Tennessee and the date he was returned to Alabama and that he was entitled to credit for the time between the date he was incarcerated in Florida and the date he was returned to Alabama.
Writesman is distinguishable from the instant case because the parolee in that case was rearrested in Tennessee for violating the terms of his parole by failing to report. He was not arrested on new charges in Tennessee and subsequently declared delinquent based on the commission of new criminal charges. Stated differently, the parolee was “rearrest[ed in Tennessee] as a delinquent parolee.” § 15-22-32(a). The parolee in Writesman was entitled to credit against his original sentence from the time of his arrest for failing to report until he was returned to Alabama authorities.[4] It is unclear why the parolee in Sundberg was arrested; therefore, that opinion is of limited prece-dential value in interpreting the phrase “rearrest as a delinquent parolee” found in § 15-22-32(a).
We recognize that parole does not allow a parolee full liberty or restore the parolee’s full liberty interest. Instead, a parolee remains technically in custody of the State until he or she satisfies the conditions of parole. Beavers v. State, 666 So.2d 868 (Ala.Crim.App.1995). Parole is a release from prison before completion of a sentence, on the condition that the parolee abide by certain parole rules, but parole does not end the original sentence imposed. Id.
In the present case, Upshaw was on parole when he was arrested by Georgia authorities for new crimes committed in Georgia. Because of Upshaw’s status as a parolee in Alabama, the Georgia authorities notified the Parole Board of Upshaw’s arrest. The Parole Board then declared Upshaw delinquent based on the new criminal charges because those charges were violations of the conditions of Upshaw’s parole. ADOC filed a detainer against Upshaw. After he had served part of his sentence in Georgia for the crimes he committed in Georgia, Georgia placed Upshaw on parole in Georgia. However, Upshaw was not released because the detainer filed by the Parole Board remained in place. Rather, after serving the incarceration portion of his Georgia sentence, Upshaw was returned to the custody of ADOC and his parole was revoked.
Section 15-22-32(a) provides that “[t]he delinquent parolee shall be deemed to have begun serving the balance of the time required on the date of his or her rearrest as a delinquent parolee.” This allows a parolee credit for time served *75 against his original sentence when he is rearrested as a delinquent parolee. Up-shaw, however, was not rearrested as a delinquent parolee. Instead, Upshaw was arrested on new charges in Georgia and was declared delinquent because by committing the offenses that resulted in those new criminal charges Upshaw had violated the terms of his parole. A detainer was then filed against Upshaw. However, his liberty was not restrained by the detainer until he was rearrested by Alabama authorities following his parole by Georgia authorities. That is, his liberty was not restrained in connection with his delinquency until he was subsequently arrested by Alabama authorities as a delinquent parolee. Upshaw’s out-of-state incarceration was not the result of the detainer lodged against him, nor was it due to an arrest based on a parole delinquency; rather, it was a consequence of his arrest and conviction for criminal charges in Georgia. Accordingly, § 15-22-82 does not provide Upshaw credit for the time he spent incarcerated in Georgia.
We now turn to Upshaw’s argument that, under the construction given it by the Court of Criminal Appeals, § 15-22-32 as applied to in-state and out-of-state parolees violates the Equal Protection Clause. Under the Equal Protection Clause of the Fourteenth Amendment, “all persons similarly situated should be treated alike.” City of Cleburne, Texas v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To assert a viable equal-protection claim, a plaintiff must first make a threshold showing that he or she was treated differently from others similarly situated. Up-shaw’s pro se petition does not allege or demonstrate that in-state parolees and out-of-state parolees are treated differently by ADOC in determining credit for incarceration when they are rearrested as delinquent parolees. Likewise, the limited record on appeal does not support the allegation. “[T]his Court is bound by the record on appeal; an appellate court ‘ “may only consider the facts contained in the record on appeal, and it may not presume any facts not shown by that record and make them a ground for reversal.” ’ ” Johnson v. State, 823 So.2d 1, 22 (Ala.Crim.App.2001) (quoting Pressley v. State, 770 So.2d 115, 123 (Ala.Crim.App.1999), aff'd, 770 So.2d 143 (Ala.2000), quoting in turn Carden v. State, 621 So.2d 342, 346-47 (Ala.Crim.App.1992)). Accordingly, we will not address this argument.
Based on the foregoing, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
STUART, PARKER, SHAW, MAIN, WISE, and BRYAN, JJ., concur.
MOORE, C.J., and MURDOCK, J., dissent.

. A petition for a writ of habeas corpus is the proper method by which to test whether ADOC has correctly calculated the time an inmate must serve in prison. Breach v. State, 687 So.2d 1257 (Ala.Crim.App.1996); Swicegood v. State, 646 So.2d 158 (Ala.Crim.App.1993). We note that in his appeal to the Court of Criminal Appeals, Upshaw named the State of Alabama as the appellee. In this Court, the respondent's briefs have been filed by ADOC.

. The interstate compact is an agreement among participating states that allows parolees in those states, under certain circumstances, to transfer from one state to another for supervision. See § 15-22-1, Ala.Code 1975 (repealed and replaced by § 15-22-1.1 and § 15-22-1.2, Ala.Code 1975).

.Upshaw was arrested on various charges of robbery, entering an automobile, theft by taking, obstructing a law-enforcement officer, no proof of insurance, and fleeing or attempting to elude a police officer. He was sentenced in Georgia to 20 years’ imprisonment for counts 1, 2, 4, 7, and 9 (robbery charges), to 5 years for counts 3, 5, 8, 10, 11, and 12 (robbery/entering-an-automobile charges), and 12 months for counts 6, 13, 14, 15 (theft by taking, obstructing a law-enforcement officer, no proof of insurance, and eluding a police officer), the sentences to be served concurrently.

. In Writesman, the Court of Criminal Appeals gave Writesman credit under § 15-22-32 for time he spent in Florida after being arrested following his escape from work release. Work release is not parole; therefore, § 15-22-32 is inapplicable. Section 15-18-6, Ala.Code 1975, addresses credit toward sentences for recaptured escapees.