On Rehearing Ex Mero Motu

WELCH, Judge.
This Court’s opinion of September 28, 2012, is withdrawn and the following substituted therefor.
Hugh Bradley Adams appeals from his convictions for unlawful possession of the controlled substance methamphetamine, a violation of § 13A-12-212(a)(l), Ala.Code 1975; first-degree unlawful manufacturing of methamphetamine, a violation of § 13A-12-218; and unlawful possession of drug paraphernalia, a misdemeanor proscribed by § 13A-12-260, Ala.Code 1975. Adams was sentenced as a habitual felony offender to 15 years’ imprisonment for possession of methamphetamine, to life imprisonment without the possibility of parole for manufacturing methamphetamine, and to 12 months in jail, which sentence was suspended, for possession of drug paraphernalia.
Adams presents two issues on appeal. Because Adams does not challenge the sufficiency of the evidence, it is unneces *752 sary to set forth a complete explanation of the facts that underlie his conviction. Adams was arrested for the instant charges as a consequence of officers’ executing a misdemeanor arrest warrant for Adams at Adams’s residence. As a result of searching Adams incident to his arrest, officers found a syringe and what they believed to be methamphetamine in Adams’s pocket. A search of other individuals at the scene disclosed' another small bag of what appeared to be methamphetamine and a receipt, with a date from the night before, for the purchase of cold medicine. The officers knew that cold medicine was used in manufacturing methamphetamine. Officers could smell the chemical odor associated with methamphetamine coming from Adams’s garage. A search warrant was obtained. Numerous items associated with the manufacture of methamphetamine were discovered as a result of the search.
Adams contends on appeal that the trial court erred when it denied Adams’s motion to dismiss the indictment charging him with the unlawful manufacture of methamphetamine. The indictment charged:
“The grand jury of said county charge that, before the finding of this indictment, HUGH BRADLEY ADAMS, alias BRADLEY HUGH ADAMS, whose name is to the grand jury otherwise unknown, did unlawfully manufacture a controlled substance or possess one or more precursor substances with the intent to manufacture a controlled substance, to-wit: Methamphetamine, and in conjunction therewith, the following conditions occurred: a clandestine laboratory operation was to take place or did take place within 500 feet of a residence, place of business, church, or school, in violation of Section 13A-12-218 of the Alabama Criminal Code, against the peace and dignity of the State of Alabama.”
(C. 90.)
Before trial began on August 22, 2012, Adams timely moved to dismiss this indictment, arguing that the indictment did not properly charge the unlawful manufacture of methamphetamine in the first degree because, according to Adams, it did not allege that at least two of the “conditions” listed in § 13A-12-218(a), Ala.Code 1975, existed in conjunction with a violation of § 13A-12-217, Ala.Code 1975, which defines the offense of unlawful manufacture of methamphetamine in the second degree. “[A] defendant must object to the failure of the indictment to state a charge ‘during the pendency of the proceeding.’ ” Ex parte Harper, 594 So.2d 1181, 1193 (Ala.1991) (indictment was not void for failing to allege that distribution of controlled substance offense was committed knowingly).
Rule 15.2(d), Ala. R.Crim. P., provides:
“(d) Objections Which May Be Raised at Any Time. The lack of subject matter jurisdiction or the failure of the charge to state an offense may be raised by the court or by motion of the defendant at any time during the pendency of the proceeding. Once such an issue is raised by the court, the procedure thereafter shall be the same as if the defendant had raised the issue by appropriate motion.”
Methamphetamine is a Schedule II controlled substance.
A charge of first-degree unlawful manufacture of methamphetamine includes charging the elements necessary to charge second-degree unlawful manufacture of methamphetamine and at least two of the “conditions” found in § 13A-12-218(a). Section 13A-12-217 defines second-degree unlawful manufacturing of a controlled substance as follows:
*753 “(a) A person commits the crime of unlawful manufacture of a controlled substance in the second degree if, except as otherwise authorized in state or federal law, he or she does any of the following:
“(1) Manufactures a controlled substance enumerated in Schedules I to V, inclusive.
“(2) Possesses precursor substances as determined in Section 20-2-181, in any amount with the intent to unlawfully manufacture a controlled substance.
“(b) Unlawful manufacture of a controlled substance in the second degree is a Class B felony.”
Section 20-2-2(13), Ala.Code 1975, defines “manufacture” as:
“The production, preparation, propagation, compounding, conversion, or processing of a controlled substance either directly or indirectly, by extraction from substances of natural origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container; except [exclusions not applicable here].”
The “conditions” necessary to elevate second-degree unlawful manufacture of a controlled substance to first-degree unlawful manufacture of a controlled substance are set forth in § 13A-12-218(a), which defines first-degree unlawful manufacture of a controlled substance:
“(a) A person commits the crime of unlawful manufacture of a controlled substance in the first degree if he or she violates Section 13A-12-217 and two or more of the following conditions occurred in conjunction with that violation:
“(1) Possession of a firearm.
“(2) Use of a booby trap.
“(3) Illegal possession, transportation, or disposal of hazardous or dangerous materials or while transporting or causing to be transported materials in furtherance of a clandestine laboratory operation, there was created a substantial risk to human health or safety or a danger to the environment.
“(4) A clandestine laboratory operation was to take place or did take place within 500 feet of a residence, place of business, church, or school.
“(5) A clandestine laboratory operation actually produced any amount of a specified controlled substance.
“(6) A clandestine laboratory operation was for the production of controlled substances listed in Schedule I or Schedule II.
“(7) A person under the age of 17 was present during the manufacturing process.
“(b) Unlawful manufacture of a controlled substance in the first degree is a Class A felony.”
(Emphasis added.)
Section 13A-l-2(3), Ala.Code 1975, defines a clandestine laboratory operation as any of the following:
“a. Purchase or procurement of chemicals, supplies, equipment, or laboratory location for the unlawful manufacture of controlled substances.
“b. Transportation or arranging for the transportation of chemicals, supplies, or equipment for the unlawful manufacture of controlled substances.
“c. Setting up of equipment or supplies in preparation for the unlawful manufacture of controlled substances.
“d. Distribution or disposal of chemicals, equipment, supplies, or products used in or produced by the unlawful manufacture of controlled substances.”
*754 Adams argued before his trial and on appeal that his indictment alleged only-condition number (4) of § 13A-12-218(a)— “[a] clandestine laboratory operation was to take place or did take place within 500 feet of a residence, place of business, church, or school” — had occurred in conjunction with § 13A-12-217. Therefore, Adams argued, his indictment did not charge first-degree unlawful manufacturing of methamphetamine.
The State responded at trial and on appeal by asserting that “while the indictment is not drafted perfectly ... it is sufficient ... to give [Adams] notice of what he’s being charged with” in compliance with § 15-8-25, Ala.Code 1975. (R. 20.) Section 15-8-25 states:
“An indictment must state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended and with that degree of certainty which will enable the court, on conviction, to pronounce the proper judgment. In no case are the words ‘force of arms’ or ‘contrary to the form of the statute’ necessary.”
According to the State, two conditions were set forth in the indictment. The State asserts that one condition, number (4) of § 13A-12-218(a), was clearly set forth after the indictment’s second colon— “[a] clandestine laboratory operation was to take place or did take place within 500 feet of a residence, place of business, church, or school.” According to the State, before its first colon, the indictment charged a second condition, i.e., that Adams “did unlawfully manufacture a controlled substance or possess one or more precursor substances, to-wit: Methamphetamine.” The State contends that “did unlawfully manufacture a controlled substance or possess one or more precursor substances, to-wit: Methamphetamine,” means the same thing as and prohibits the same conduct as condition number (6)— “[a] clandestine laboratory operation was for the production of controlled substances listed in Schedule I or Schedule II.” Therefore, according to the State, the failure of the indictment to specifically and separately set forth condition (6) of § 13A-12-218(a) was not fatal to the charge of first-degree unlawful manufacture of methamphetamine.
The State specifically argued:
“That, coupled with the fact that we did put him on notice, also of the fact of the clandestine laboratory taking place within five hundred feet of a residence, I think a fair reading of the entire indictment, not just solely looking at the section after the colon, fairly puts him on notice.
“While it’s not perfectly drafted, I believe it’s sufficiently drafted to give him notice that he’s being charged with manufacturing in the first degree.”
(R. 21.)
“A defendant is constitutionally entitled to be informed of the nature and the cause of the accusation against him. U.S. Const, amend. VI; Ala. Const, art. I, § 6. The function of the indictment is to inform the accused of the crime with which he is charged, so that he may prepare a defense if one is available, Ex Parte Hightower, 443 So.2d 1272 (Ala.1983); City of Montgomery v. Collins, 355 So.2d 1111 (Ala.1978). The person accused of a crime is required at trial to answer only the specific charge contained in the indictment. Geeter v. State, 35 Ala.App. 207, 45 So.2d 167 (1950).”
Ex parte Washington, 448 So.2d 404, 407 (Ala.1984).
“ ‘ “ ‘An indictment that fails to allege each material element of an offense *755 fails to charge that offense.’ ” ’ Ex parte Lewis, 811 So.2d 485, 488 (Ala.2001), overruled on other grounds, Ex parte Seymour, 946 So.2d 536 (Ala.2006), quoting Barbee v. State, 417 So.2d 611, 613 (Ala.Crim.App.1982), quoting in turn, United States v. London, 550 F.2d 206, 211 (5th Cir.1977).” A.L.L. v. State, 42 So.3d 138, 140 (Ala.Crim.App.2008), reversed on other grounds, 42 So.3d 146 (Ala.2009).
“1 “ ‘If the indictment is framed under a statute which defines the offense created, and prescribes its constituents, it must allege in the words of the statute, or other words equivalent in meaning, all the statutory elements which are essentially descriptive of the offense.’ ” Barbee v. State, 417 So.2d 611, 612-13 (Ala.Cr.); Tinsley v. State, 485 So.2d 1249, 1251 (Ala.Cr.App.1986)....
“ ‘ . An indictment must contain the elements of the offense charged, and also sufficiently apprise the appellant of what he must be prepared to meet.” Hardy v. State, 409 So.2d 996, 1001 (Ala.Cr.App.1982).
“ ‘See Edwards v. State, 379 So.2d 336, 338 (Ala.Cr.App.1979), cert. denied, Ex parte Edwards, 379 So.2d 339 (Ala.1980).’
“Felder v. State, 512 So.2d 817, 818 (Ala.Crim.App.1987).”
Hemrick v. State, 922 So.2d 967, 968-69 (Ala.Crim.App.2005) (emphasis added).
The indictment in this case did not charge first-degree unlawful manufacturing of methamphetamine because it did not charge all the elements of that offense. The language “did unlawfully manufacture a controlled substance or possess one or more precursor substances, to-wit: Methamphetamine,” charges second-degree manufacturing of methamphetamine. See § 13A-12-217.
Although an offender may “unlawfully manufacture a controlled substance” as expressed in § 13A-12-217 by use of a lab for the production, conversion, or processing of the controlled substance, he may also “unlawfully manufacture a controlled substance” by preparation, propagation, or compounding it, or by engaging in any packaging or repackaging of the substance or labeling or relabeling of its container. See Section 20-2-2(13), Ala.Code 1975. In short, the first three actions described in the definition of “manufacture” may involve use of a laboratory; however, seven of the actions that could be performed to “manufacture a controlled substance” do not require the use of a laboratory.
An offender could also “manufacture” a controlled substance in a way that is not “clandestine,” as that term is defined above. The indictment, as written, could also be read to contemplate that merely placing a label on a package of methamphetamine was manufacturing a controlled substance, and that action would not establish the missing sixth factor.
Thus, Adams was not given fair notice that he was being charged with conducting “[a] clandestine laboratory operation [which] was for the production of controlled substances listed in Schedule I or Schedule II.”[1]
Moreover, the legislature specifically required proof of at least two additional elements listed in § 13A-12-218 to elevate second-degree unlawful manufacturing of methamphetamine to first-degree unlawful manufacturing of methamphetamine. The *756 legislative requirement in § 13A-12-218(a) that an offender must violate § 13A-12-217 “and two or more of the following conditions [must have] occurred in conjunction with that violation,” would be grammatically nonsensical and illogical if the two “conditions” occurring in conjunction with § 13A-12-217 could be satisfied by the necessary elements from § 13A-12-217 itself, as urged by the State.
The evidence presented at trial to prove unlawful manufacturing of methamphetamine charged under § 13A-12-217 and to prove that a clandestine laboratory operation existed to produce methamphetamine charged under § 13A-12-218 may overlap, but a defendant is entitled to be informed in the indictment as to which conditions of § 13A-12-218 he or she must defend. Ex parte Washington, supra.
The trial court erred when it denied Adams’s timely motion to dismiss the indictment charging him with first-degree unlawful manufacture of methamphetamine. The trial court’s judgment in this regard is due to be reversed.[2]
Reversal as to this issue pretermits review of Adams’s remaining claims, which further challenge the indictment charging the manufacture of methamphetamine and challenge the trial court’s jury instruction on manufacturing methamphetamine.
The judgment of the circuit court as to the unlawful-manufacture-of-a-controlled-substance charge is reversed, and this case is remanded for proceedings consistent with this opinion.
Although Adams appealed his unlawful-possession-of-methamphetamine and unlawful-possession-of-drug paraphernalia convictions, he presented no appellate challenge to those convictions. Therefore, those convictions are affirmed.
ON REHEARING EX MERO MOTU: OPINION OF SEPTEMBER 28, 2012 WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
WINDOM, P.J., and KELLUM, BURKE, and JOINER, JJ., concur.

. Moreover, a charge of second-degree unlawful manufacture of a controlled substance based on possession of a precursor chemical clearly requires the existence of at least two conditions listed in § 13A-12-218(a) to elevate the crime to first-degree unlawful manufacture of a controlled substance.

. Although the indictment charged second-degree manufacturing of methamphetamine and the State presented sufficient evidence to support a conviction for second-degree manufacturing of methamphetamine, the circuit court did not instruct the jury on this lesser-included offense. Therefore, we cannot remand this cause to the circuit court for it to enter a judgment finding Adams guilty of the lesser-included offense of second-degree manufacture of methamphetamine. See Brarid v. State, 960 So.2d 748 (Ala.Crim.App.2006) (conviction reversed and a judgment entered on a lesser-included offense); McMillian v. State, 58 So.3d 849 (Ala.Crim.App.2010) (conviction reversed and judgment entered on a lesser-included offense); Reck v. State, 84 So.3d 151 (Ala.Crim.App.2010) (conviction reversed and judgment entered on a lesser-included offense), reversed on other grounds, 84 So.3d 155 (Ala.2011).