Rel: November 7, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2025-2026

_____

## CR-2025-0042

_____

## State of Alabama

## v.

## Donald McMillian, Jr.

## Appeal from Mobile Circuit Court
## (CC-23-293)

COLE, Judge.

The State of Alabama appeals the order of the Mobile Circuit Court dismissing with prejudice the indictment charging Donald McMillian, Jr., with second-degree assault, a violation of § 13A-6-21, Ala. Code 1975. Under the circumstances discussed below, we hold that the circuit court's dismissal of McMillian's indictment with prejudice constituted an abuse

of discretion. Thus, we reverse and remand for further proceedings consistent with this opinion.

Facts and Procedural History

On January 20, 2023, a Mobile County grand jury indicted McMillian for second-degree assault; the indictment reads as follows:

"DC22-00069  ASLT 2/<u>PHYS INJ</u>/WEAP
"Bond Amount: $3000.00

"The Grand Jury of said county charge that, before the finding of this indictment, Donald McMillian Jr., whose name is to the Grand Jury otherwise unknown, did, on or about December 28, 2021, with the intent to cause physical injury to Demetris Maxie, by means of a deadly weapon or dangerous instrument, to-wit: by firearm, in violation of § 13A-6-21 of the Code of Alabama, against the peace and dignity of the State of Alabama."

(C. 7 (emphasis added).)  On April 12, 2023, McMillian appeared in court for his arraignment, waived the reading of the indictment, and entered a plea of not guilty.  (C. 29.)

On October 11, 2023, the State moved to amend McMillian's indictment, requesting to change the statutory citation therein from a <u>general</u> second-degree-assault charge under § 13A-6-21 to a <u>specific</u> second-degree-assault charge under § 13A-6-21<u>(a)(2)</u> -- reflecting that McMillian committed a second-degree assault by causing physical injury

2

with a deadly weapon or dangerous instrument. (C. 36-39.) The State asserted that "[n]o different offense would be charged and the substantial rights of the defendant would not be prejudiced." (C. 37.) Specifically, the State explained that McMillian would suffer no prejudice from the amendment because "the indictment track[ed] the language of … § 13A-6-21(a)(2), Assault in the Second Degree <u>Causing Physical Injury</u> with Weapon" and because "[t]he caption of the indictment, naming the offense, reads Assault in the Second Degree <u>Causing Physical Injury with Weapon</u>." (C. 36 (emphasis added).) In addition, the State explained that McMillian had already been "provided with discovery, all of which indicated that he was charged with Assault in the Second Degree <u>Causing Physical Injury</u> with Weapon." (C. 37.) The State further asserted that McMillian had been provided with the specifics of the offense, including "officer's narratives [that] referenced [the] Defendant shooting the victim with a firearm [and] causing injury to the victim, witness statements [that] referenced [the] Defendant shooting the victim with a firearm causing injury to the victim, [and] photos of [the] victim's injuries [that] [we]re consistent with [the] victim being shot with a firearm." (C. 37.) (See also C. 8-10 (circuit court's January 20, 2023,

3

discovery order) and C. 25-28 (circuit court's April 11, 2023, orders granting McMillian's motion for discovery of evidence under Rule 404(b), Ala. R. Evid., any evidence covered by Rule 16, Ala. R. Crim. P., any deals or promises the State made with witnesses against McMillian, and any discoverable information regarding the State's experts).) The circuit court granted the State's motion to amend McMillian's indictment on October 12, 2023. (C. 39.)

On October 23, 2023, McMillian was "in court for trial," but his case was "crowded out," and the circuit court "reset [McMillian's case] for trial on February 5, 2024." (C. 44.) On February 5, 2024, McMillian's case was again "crowded out" and "reset for trial on September 9, 2024." (C. 46.) On September 9, 2024, McMillian's case was "reset for trial on January 6, 2025." (C. 48.) When McMillian appeared for trial on January 6, 2025, he made an oral motion to dismiss his indictment with prejudice based upon the indictment's failure to allege an offense, but, in the alternative, he asked the court for a "continuance until [the State] can do a superseding indictment so he [would not] have to bond out again." (C. 53; R. 4.) The circuit court set McMillian's motion for a hearing on

January 8, 2025, and reset McMillian's case for trial on May 19, 2025. (C. 53; R. 4.)

At the January 8, 2025, motion hearing, McMillian informed the circuit court that, although he was arrested on December 30, 2021, he was not indicted until January 20, 2023, almost 13 months after his arrest. (R. 6-7.) McMillian explained that, on October 11, 2023, the State moved to amend the indictment because the State wanted to "specifically restrict the code section" to § 13A-6-21(a)(2) to charge him "specifically" with "causing injury by means of a deadly weapon or dangerous instrument." (R. 7.) However, McMillian asserted that a "terminal defect in the indictment" remained because the body of the indictment did not allege the essential element that McMillian actually "cause[d] physical injury." (R. 8.) McMillian's counsel acknowledged that she "really didn't care … about [the State] changing the code section" and that she herself "didn't catch … the flaw in the language [the omission of causing physical injury]" until "getting [her] opening slides ready" for trial. (R. 8.) Nonetheless, McMillian asked that the charge be dismissed with prejudice. The State asked to nolle pros the indictment so that McMillian could be reindicted "this term" and proceed to the May 19, 2025, trial date

5

that the court had already set on January 6, 2025, when McMillian made his motion the morning trial was set to begin. (R. 9.)

McMillian argued below that the indictment should be dismissed with prejudice because he had "no criminal history" and because the case had already been pending trial approximately three years and would be delayed further if the trial was continued. (R. 10-14.) McMillian did not mention the issue of a speedy trial until the trial court suggested that "it comes down to a speedy trial issue at this point in fairness to the defendant." (R. 12.) McMillian then said that he was prejudiced by the delay because he lost a job after his arrest and had been "unable to get jobs paying what he is capable of making," although he had gotten another job and had "been there for three years." (R. 13, 15.) McMillian also generally asserted that the second-degree-assault charge had been "hanging over his head for three years" and that "[t]he longer a case rocks on, the harder it is to get witnesses" and the more "[m]emories fade." (R. 5.) However, McMillian acknowledged that neither he nor the State had ever requested a trial continuance before the trial setting on January 6, 2025, when McMillian moved for dismissal of the defective indictment. (R. 12, 14.) McMillian also conceded that the State's failure to allege in

6

the body of the indictment that he had "caused physical injury" was "negligent" and "not intentional." (R. 15.) Finally, McMillian asked that, if the circuit court dismissed the case <u>without prejudice</u>, the circuit court leave the matter on the docket so that he would not "have to bond a second time". (R. 16.)

The State vigorously argued that the charge against McMillian should not be dismissed <u>with prejudice</u> because the evidence indicating that McMillian had shot his "brother-in-law"[1] was substantial. (R. 11, 17-20.) Although the perpetrator was wearing a mask at the time, the witnesses who identified McMillian as the shooter had "known [him] for most of his life." (R. 17.) In addition, witnesses "identified a [gray Toyota Camry] that was linked to [McMillian] that he was [driving at the time of the shooting] and then drove off in." (R. 18.) Witnesses also said that the shooting was prompted by an argument that McMillian had with the victim at a family Christmas party the previous day. In addition, the

---

[1]McMillian's counsel explained that the sister of the victim was essentially McMillian's "wife" because they had been together "like, 15 years." (R. 11.)

State informed the court that the victim and witnesses were ready to testify at McMillian's trial. (R. 17-18.)

The circuit court recognized that McMillian had been charged with a "violent crime" but was inclined to dismiss McMillian's second-degree-assault charge with prejudice based on speedy-trial concerns. The circuit court noted that, although the indictment previously had been amended, the defect that McMillian asserted existed had been neither discovered nor corrected, and that McMillian's counsel had not waited to seek to dismiss the indictment after the jury was sworn or at "the close of the State's case." (R. 21-22, 24.) Immediately after the motion hearing, which occurred two days after the case had been set for trial, the State filed a written objection to the dismissal of McMillian's indictment with prejudice. (C. 55-56.) However, on the same day, the circuit court entered an order finding that McMillian's indictment was "fatally flawed" because "[i]t alleges Defendant McMillian intended to cause physical harm to the victim, but it does not allege that he actually did so." The circuit court granted McMillian's motion to dismiss the indictment with prejudice and denied the "State's motion to nolle pros this action." (C.

8

57.) The order did not mention denial of a speedy trial as a ground for the dismissal.

In accordance with Rule 15.7, Ala. R. Crim. P., the State timely filed its appeal of the circuit court's order and properly certified that this appeal was "not brought for the purpose of delay and that the order appealed, if not reversed, will be fatal to the prosecution of the charge in this case." (C. 59.)

Analysis

As an initial matter, the State concedes that McMillian's indictment failed to charge an offense because it failed to allege that McMillian caused the victim physical injury, an essential element of the offense. See, e.g., Adams v. State, 124 So. 3d 750, 754-55 (Ala. Crim. App. 2013) ("'"'An indictment that fails to allege each material element of an offense fails to charge that offense.'"'" (citations omitted)). The State also concedes that McMillian's motion to dismiss the indictment was timely under Rule 15.2, Ala. R. Crim. P., which provides that objections based on the "failure of the charge to state an offense may be raised … at any time during the pendency of the proceeding." The State, however,

argues that the circuit court abused its discretion by dismissing McMillian's indictment <u>with prejudice</u>. We agree.

A circuit court has the authority to dismiss an indictment for failure to charge an offense. <u>See, e.g.</u>, <u>State v. Walker</u>, 192 So. 3d 426, 428 (Ala. Crim. App. 2015) (recognizing a court's authority to dismiss an indictment based on the indictment's failure to charge an offense), Rule 13.5(c)(1), Ala. R. Crim. P. (providing that a motion to dismiss the indictment "may be based upon … the failure of the indictment to charge an offense"), and § 15-8-130, Ala. Code 1975 (providing that an indictment may be dismissed with permission of the court). However, "[w]hen … an indictment [is] quashed] … because it charged no offense …, the court may order another indictment to be preferred for the offense charged or intended to be charged." § 15-8-131, Ala. Code 1975. Indeed, it is well settled that "it is the better practice to bring the second indictment before the first is quashed." <u>Johnson v. State</u>, 479 So. 2d 1377, 1381 (Ala. Crim. App. 1985). In short, generally, when an indictment is quashed or dismissed because of a defect, another indictment may be issued.

In <u>State v. Watts</u>, 35 So. 3d 1 (Ala. Crim. App. 2009), this Court considered whether a circuit court abused its discretion by dismissing charges <u>without prejudice</u> against a defendant based on a "lack of prosecution" because the victim and a witness were not present for voir dire. We recognized that a circuit court "'"is vested with discretion in the conduct of a trial, and the appellate courts will not interfere with the exercise of that discretion unless it clearly appears that there has been an abuse of discretion."'" <u>Id.</u> at 4 (quoting <u>Baker v. State</u>, 906 So. 2d 210, 269 (Ala. Crim. App. 2001) (reversed on other grounds by <u>Ex parte Baker</u>, 906 So. 2d 277 (Ala. 2004)), quoting in turn <u>Carden v. State</u>, 621 So. 2d 342, 346 (Ala. Crim. App. 1992)). We also recognized that "[i]t is well settled that the process of voir dire examination remains within the sound discretion of the circuit court." <u>Id.</u> (citing <u>Clark v. State</u>, 294 Ala. 493, 495, 318 So. 2d 822, 824 (1975)). Nonetheless, this Court concluded that, under the circumstances of that case, the circuit court had abused its discretion because it "could have imposed less stringent measures than dismissing the charges." <u>Id.</u> at 7. Specifically, "Watts made no showing of prejudice, on speedy-trial ground or otherwise, as a result of the absence of the victim and witness for presentation to the venire; the

11

victim and the witness would be available to testify for trial; and there was no indication of undue continuances." Id.

In State v. Stallworth, 337 So. 3d 1201, 1210 (Ala. Crim. App. 2021), we again acknowledged a circuit court's interest in managing its case docket, including placing "reasonable time limits on the parties in a case." However, we explained that the circuit court's "interest does not allow the court to interfere with the State's duty to prosecute cases, which the dismissal of the indictment in this case does, and does not allow the court to exercise its authority in an unreasonable manner." Id. Relying on Watts, supra, we held that

> "the circuit court did not have the authority to grant Stallworth's motion to dismiss the indictment against him based on a factual determination of the evidence or for the State's failure to object to the motion to dismiss the indictment within a prescribed time, especially where the delay in the filing of the objection was not unreasonable and did not interfere with Stallworth's right to a speedy trial."

Id.

As we recognized in Watts and Stallworth, "the circuit court's discretion to dismiss an indictment is not unlimited." Stallworth, 337 So. 3d at 1210. Although a circuit court has the authority to dismiss charges against a defendant, when the indictment fails to include an essential

12

element of the offense, as in this case, "a circuit court shall not 'impermissibly interfere with the State's right to prosecute' and its discretion should not be exercised in an '"arbitrary, fanciful, or clearly unreasonable" manner.'" Id. (quoting Watts, 35 So. 3d at 5-7 (emphasis added).) As in Watts and Stallworth, "the circuit court could have imposed less stringent measures than dismissing the [second-degree-assault] charge[] against" McMillian with prejudice. Watts, 35 So. 3d at 7. Indeed, the State asked the circuit court to nolle pros the defective indictment and to allow it to reindict McMillian "this term," and the circuit court had already set a new trial date for May 19, 2025, a mere fourth months later. (R. 9.) In addition, the victim and witnesses were ready to testify. (R. 17.)

Moreover, McMillian made no showing that would have supported the circuit court's dismissal with prejudice on speedy-trial grounds or otherwise. Although the indictment was defective for failing to state that McMillian had "caused physical injury," the record shows that the charge -- that he committed a second-degree assault by shooting his brother-in-law in violation of § 13A-6-21(a)(2) -- was understood by McMillian and his counsel, and there was no allegation that McMillian had been unable

13

to prepare a defense. Indeed, McMillian's counsel had been representing him since April 10, 2023, and only noticed the defect on the eve of trial as she was preparing her "opening slides." (R. 8, 15.) Likewise, there was no allegation of the State's acting in bad faith. McMillian acknowledged that the State's failure to recognize the defect in the indictment was no more than negligence. McMillian also acknowledged that the State had never sought a continuance until the motion to dismiss was made on the day of trial, and the State reasonably asked to nolle pros the indictment and reindict McMillian "this term" in time for the May 19, 2025, trial date. Finally, although McMillian alleged that he had been prejudiced by the three-year delay since his arrest, his contentions were general and speculative -- that the charge had been "hanging over his head for three years" and that witnesses' memories fade over time. (R. 15.) The closest McMillian got to demonstrating specific prejudice was stating that he had lost a job upon arrest and was "unable to get jobs paying what he is capable of making as a result"; however, McMillian also informed the circuit court that he had secured another job, which he had held for "three years." (R. 13, 15.)

14

Although McMillian contends on appeal that he made a "showing of prejudice," the record is clear that the showing he made was insufficient to suggest a speedy-trial violation under Barker v. Wingo, 407 U.S. 514 (1972). When an infringement on the right to a speedy trial under the Sixth Amendment is claimed, we consider the following four Barker factors: "(1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant." Cartwright v. State, 346 So. 3d 22, 31 (Ala. Crim. App. 2020) (citing Barker, 407 U.S. at 530). Here, the three-year delay had nothing to do with the State. Had the circuit court dismissed the charge against McMillian without prejudice so that McMillian could be reindicted and tried on May 19, 2025, only a four-month delay would have been attributable to the State's negligence. In addition, the fact that McMillian did not raise any speedy-trial concern until he moved to dismiss the indictment on January 6, 2025, indicates that McMillian, who was not incarcerated but working during the delay, suffered no prejudice. Moreover, McMillian was required to "'point to specific facts … to support his claim of actual prejudice.'" Cartwright, 346 So. 3d at 36 (quoting Irvin v. State, 940 So. 2d 331, 344 (Ala. Crim. App. 2005)).

15

"'"'[S]peculative allegations, such as general allegations of loss of witnesses and failure of memories, are insufficient to demonstrate the actual prejudice....'" that the appellant must establish.'" Id. (quoting Irvin, 940 So. 2d at 344, quoting in turn Haywood v. State, 501 So. 2d 515, 518 (Ala. Crim. App. 1986), quoting in turn United States v. Butts, 524 F.2d 975, 977 (5th Cir. 1975)). Clearly, McMillian failed to make any showing to warrant dismissal of his indictment with prejudice under the Barker factors. Furthermore, McMillian has cited no case that suggests that he was entitled to a "windfall" -- release from criminal liability for a violent crime -- merely because he raised the indictment's defect before the jury was sworn and "didn't wreck a trial week." (R. 22.)

Considering the totality of the circumstances, we hold that the circuit court abused its discretion by dismissing the second-degree-assault charge against McMillian with prejudice. Dismissing an indictment with prejudice is an extreme sanction and was not warranted in these circumstances.

## Conclusion

The circuit court's order dismissing McMillian's second-degree-assault charge with prejudice is due to be reversed, and this case is

16

remanded to the circuit court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Windom, P.J., and Kellum, Minor, and Anderson, JJ., concur.